# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3274

_____

United States of America,           \*

                                     \*

        Plaintiff - Appellant,     \*

                                     \*   Appeal from the United States

      v.                      \*   District Court for the

                                     \*   District of Minnesota.

Osvaldo Hernandez Leon;     \*

Jesus Garcia Ibarra,         \*

                                     \*

        Defendants - Appellees.   \*

_____

Submitted: May 10, 2004
Filed: August 26, 2004

_____

Before MURPHY and FAGG, Circuit Judges, and GOLDBERG, Judge.[1]

_____

MURPHY, Circuit Judge.

Osvaldo Hernandez Leon and Jesus Garcia Ibarra were indicted for conspiracy and possession with intent to distribute methamphetamine after a search of their residence uncovered 946.6 grams of methamphetamine, 13.56 grams of cocaine, a bag of marijuana, ammunition, and a large amount of cash. They moved to suppress that

_____

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

evidence as well as statements they subsequently made to the police. The district court granted the motion, and the government appeals. We reverse and remand.

The case arose from a series of letters sent by a concerned citizen to the mayor's office. The letters complained about heavy foot and vehicle traffic and suspected drug activity at 1054 Flandrau Street in St. Paul, Minnesota and included license numbers of vehicles visiting the address. After police determined that one of those vehicles had been stolen, Officer Ronald Lehner of the St. Paul FORCE Unit (a drug interdiction task force) began conducting surveillance of the house. During periodic surveillance from October 2002 through January 2003, he observed a suspicious number of short term visitors to the house.

On the evening of February 11, 2003, Lehner went to the residence with Officers Sontoya and Chung to conduct a "knock and talk." Garcia Ibarra's aunt, Jacqueline Mancillas, answered the door. The officers explained in English and Spanish that they were there to investigate suspicious activity and possible drug trafficking at the address. Mancillas permitted the officers to enter the house and told them that she lived there with her sister Maria and several other people, including Garcia Ibarra and Hernandez Leon. The officers said they wanted to talk to the men, and she motioned toward the stairs leading to the basement.

As Officer Lehner approached the basement stairs, a young girl yelled "The cops are here!" From the top of the stairs, Lehner saw one man coming up and another behind him. When the two saw Lehner, they turned back and rushed into a basement room. Lenher followed, but he was concerned for his safety and that of Officer Sontoya. Lehner peered around the corner into the room to check whether either man had a weapon. Hernandez Leon had his back to Lehner, but Lehner could see him place something on the headboard of a bed and cover it with a stocking cap. Lehner entered the room and asked what he was hiding. Hernandez Leon responded, "I wasn't hiding anything."

In his warrant affidavit, Lehner stated that

> For Officer safety reasons, I then took a closer look at the object Leon was attempting to conceal. I observed a partial piece of clear plastic baggie which is consistent with narcotics packaging. I walked over and lifted up the stocking hat and observed a plastic baggie, tied off, that contained a green leafy substance, consistent with marijuana by sight and smell. I then asked Leon what it was. Leon replied, "weed." I recovered the marijuana at that time and asked if he had anything else illegal in the bedroom. Leon replied, "No."

Lehner also observed in plain view a green marble pipe that appeared to contain marijuana residue. His affidavit also reported that after Garcia Ibarra told him he was the co-owner of the house with his mother, he asked him if there was anything else illegal in the bedroom. Garcia Ibarra replied, "No, go ahead and look."

While Officer Sontoya remained in the bedroom, Lehner walked into an adjacent room which contained a pool table and a dresser. The top dresser drawer was open about four inches, and Lehner saw that a loaded magazine for a .22 caliber handgun was inside it. He opened the drawer further and saw numerous loose bullets. He then opened the drawer below and saw several clear plastic bags containing a white powder, which he believed to be cocaine or methamphetamine, an electronic scale, and a food packaging sealer. The latter items are commonly used to weigh and package narcotics for distribution.

At this point Lehner left the home to obtain a search warrant. The two remaining officers handcuffed Garcia Ibarra and Hernandez Leon and waited to ensure that no one would move anything before Lehner's return. Other officers arrived in the interim and so did Garcia Ibarra's mother, Maria Mancillas. After she was told about the evidence found in the basement and that Officer Lehner was seeking a search warrant, she consented to a search of the home. No further search was conducted, however, until after Lehner returned with a warrant issued by a state

judge.  Thereafter officers executed the warrant, seized evidence, and arrested the defendants.

Defendants filed a joint motion to suppress the evidence seized from the house and their subsequent statements to law enforcement.  At a hearing before a magistrate judge, Lehner testified that he had peeked around the corner into the basement room "to see if I was going to get shot or — for my safety, just take a quick look in."  He stated that "in knock-and-talks, you never know what you're going to get and you got to be very careful. . . . Drug dealers are known to carry, you know, weapons.  I didn't know what I was, you know, going to see once I come around that corner."  When he saw Hernandez Leon hide something under the hat, he immediately went to investigate for his own safety and picked up the hat after noticing plastic consistent with drug packaging sticking out from underneath it.  Defense counsel asked him whether there had been "anything preventing you from going to court and applying for a search warrant" before he lifted the hat.  Lehner replied that he did not think he could get a warrant "on what we had at that time."  He testified that Garcia Ibarra granted him permission to "take a look around," and he then found the evidence in the next room.

The magistrate judge issued a Report and Recommendation recommending that the suppression motion be granted after finding, on the basis of the warrant affidavit, that Garcia Ibarra had consented only to a search of the bedroom and that Lehner had exceeded the scope of that consent by searching the adjacent room.  The judge concluded that the evidence found in that room should be excised from the warrant affidavit and that the redacted affidavit did not establish probable cause.  See United States v. Templeman, 938 F.2d 122, 124-25 (8th Cir. 1991) (warrant affidavits that contain information from an unlawful search are evaluated by deleting that information).  The magistrate judge concluded that without the evidence from the other room , the police could not have relied on the warrant in good faith because the affidavit was "so lacking in indicia of probable cause."  See United States v. Leon,

-4-

468 U.S. 897, 922 (1984). The magistrate judge also found that Jacqueline Mancillas had not consented to a search of the basement and that Maria Mancillas's consent was invalid because it was given under duress and subsequent to an unlawful search.

The government filed objections. It objected to the findings that the officers had not received valid consent to search the basement from the Mancillas or from Garcia Ibarra. It also objected to the conclusion that the redacted warrant affidavit was insufficient to support probable cause. In a brief order the district court adopted the Report and Recommendation in its entirety, and the government timely appealed.

On its interlocutory appeal, the government concedes that Officer Lehner exceeded the scope of Hernandez Leon's consent when he went into the adjacent room where he found the methamphetamine, cocaine, ammunition, packaging equipment, and scale. It also raises no challenge to the findings in the district court that neither Jacqueline nor Maria Mancillas gave a valid consent to search the basement. The government focuses on its argument that the remaining evidence in the redacted warrant affidavit was sufficient to support a finding of probable cause to search beyond the bedroom. Defendants argue that the district court correctly concluded that this evidence was not sufficient to support probable cause. They also argue that the discovery of the marijuana under the hat was the product of an unlawful search. Neither the magistrate judge nor the district court discussed whether the marijuana was lawfully discovered or its significance on the issue of probable cause.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures. U.S. CONST. amend. IV. A warrantless search is presumptively unreasonable absent some exception to the warrant requirement such as exigency brought about by a legitimate concern for the safety of officers or others, see United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003), or the possibility that evidence will be removed or destroyed, see United

-5-

States v. Blake, 484 F.2d 50, 54 (8th Cir. 1973). The totality of the circumstances is considered in determining whether probable cause exists to support a search warrant, Illinois v. Gates, 462 U.S. 213, 230 (1983), and a warrant is supported by probable cause if "there is a fair probability that contraband or evidence of a crime will be found in the place to be searched," United States v. Mahler, 141 F.3d 811, 813 (8th Cir. 1998). The sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information. See Templeman, 938 F.2d at 124-25. We review a district court's factual findings for clear error and its conclusion that a search violated the Fourth Amendment de novo. United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001).

The government argues that the search warrant affidavit would still have supported a finding of probable cause after excision of the evidence discovered in the adjacent room. The redacted affidavit includes references to the citizen reports about suspected drug trafficking at the address and Officer Lehner's observations of heavy foot and vehicle traffic there, involving short visits during all hours of the night. It states that Officer Lehner had been a police officer for nine years and that based on his training and experience, the activity at the house "resembled narcotics traffic coming and going from the property." It describes the officers' visit to the home, the fact that Jacqueline Mancillas had told the officers several young Hispanic males lived in the basement, the fact that the defendants hurried back into the basement upon seeing Officer Lehner, and his observation of Hernandez Leon "quickly plac[ing] his stocking hat over a small object." It reports Hernandez Leon's misleading claim that he "wasn't hiding anything" and Officer Lehner's discovery under the hat of a "plastic baggie, tied off, that contained a green leafy substance, consistent with marijuana by sight and smell." It reports Hernandez Leon's admission that the substance was "weed" and notes the presence in plain view of a green marble pipe which appeared to contain marijuana residue.

As the government points out, our court has repeatedly held that the discovery of drugs or paraphernalia in or around a suspect's house is significant on the issue of probable cause. For example, the discovery of marijuana seeds and stems in the defendant's trash was alone sufficient to establish probable cause to search a house in United States v. Briscoe, 317 F.3d 906, 908-09 (8th Cir. 2003). An affidavit recounting the discovery of drug paraphernalia with residue in defendants' trash, coupled with one defendant's drug record, established probable cause for a search of the house in United States v. Reinholz, 245 F.3d 765, 776-77 (8th Cir. 2001). And the discovery of drug paraphernalia and an address book in the defendant's trash, which corroborated an informant's tip about drug dealing, established probable cause to search the house in United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001).

In the present case, the police undertook surveillance of the house and observed foot and vehicle traffic consistent with narcotics trafficking because of citizen complaints about suspected drug dealing. They obtained entry into the house by consent and discovered marijuana and a drug pipe inside it, not merely in the outside trash. The discovery of drugs and paraphernalia corroborated the citizen reports of suspected drug trafficking. This, in combination with the officer's observations of heavy foot traffic by short term visitors at all hours of the night over a several month period and the defendants' furtive behavior, was sufficient to establish a probability that more contraband would be discovered elsewhere in the house. See Gates, 462 U.S. at 230 (probable cause is to be determined based on the totality of the circumstances). We conclude that the district court erred as a matter of law in holding that the excised warrant affidavit would not establish probable cause for a search of the basement.

That conclusion does not end the analysis, however, because the defendants contend that the marijuana was unlawfully discovered, that Officer Lehner lacked a warrant to search under the hat, and that no exception to the warrant requirement

applies.  They assert that references to the marijuana must also be deleted from the warrant affidavit and that without this evidence, the affidavit would be insufficient to establish probable cause to search outside the bedroom.

The government concedes in this appeal that lifting the hat was a search for purposes of the Fourth Amendment, see Arizona v. Hicks, 480 U.S. 321, 324-25 (1987) (moving object in order to expose parts that are not in plain view constitutes a search), but asserts that Officer Lehner had probable cause to search under the hat after he saw Hernandez Leon use it to conceal something consistent with drug packaging.  The district court did not discuss this issue.  The government argues that the warrantless search was permissible because Lehner believed that the hat concealed evidence which was threatened with imminent removal or destruction if he did not retrieve it immediately.[2]  See United States v. Esparza, 162 F.3d 978, 980 (8th Cir. 1998) (warrantless search of bathroom lawful where it appeared occupant might dispose of drugs); Blake, 484 F.2d at 54 (8th Cir. 1973) (officers could search basement for purse believed to contain drugs given the probability that it would be removed by defendant or some third party).  Defendants respond that police could have secured the house to prevent removal or destruction of any evidence while they obtained a warrant.

The exigency of a situation is to be judged based on the facts and circumstances known to the police at the time of the search.  See United States v. Cooper, 168 F.3d 336, 339 (8th Cir. 1999).  Although the defendants argue that the police could have secured the house to prevent removal or destruction of the evidence under the hat while they obtained a warrant, it is unclear from the record whether that would have appeared feasible or prudent at the time of the search.  At the time Officer

_____

[2]The government has not argued on appeal that Officer Lehner lifted the hat out of concern for his safety.  Although Lehner testified that he initially approached the hat out of concern for his safety, he stated in his warrant affidavit and in his testimony that upon closer inspection he suspected it concealed narcotics.

Lehner lifted the hat, the police had only been present in the house for a short time. They may not yet have had the opportunity to determine the number, location, identity, or intention of other people in the house. The house was the site of heavy foot and vehicle traffic by suspected drug buyers and the residence of at least six people, one of whom had already warned everyone within earshot that the police had arrived. Officer Lehner had already witnessed one attempt by Hernandez Leon to hide evidence, and it may have seemed likely that he or someone else would try again if given the opportunity. Because the district court concluded that the warrant affidavit was insufficient to establish probable cause even with the references to the marijuana, it did not discuss or make findings or conclusions on whether the warrantless search that recovered the marijuana was lawful. Since it is unclear on the basis of the record before us whether there was an apparent threat of imminent removal or destruction of evidence or whether some other exception to the warrant requirement might apply to that search, we must remand to the district court for further proceedings.

For the reasons discussed, we reverse the holding of the district court that the excised warrant affidavit could not establish probable cause and vacate the suppression order, and remand for further findings on whether the marijuana in the bedroom was lawfully discovered and for further consideration of the applicability of United States v. Leon, 468 U.S. 897 (1984), to this case. The panel will retain jurisdiction in the event of any further appeal.

_____