# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2999

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| | * | Western District of Missouri |
| Carl Amburn, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 14, 2005
Filed: June 17, 2005

_____

Before MURPHY, McMILLIAN and BYE, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Carl Amburn, Jr. (defendant), appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri following his conditional guilty plea to one count of being a felon in possession of a firearm. Defendant was sentenced to 57 months imprisonment followed by three years of supervised release. United States v. Amburn, No. 03-03047-01 (W. D. Mo. June 21, 2004) (judgment). For reversal, defendant argues that the district court erred in

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

denying his motion to suppress and in determining his sentence under the United States Sentencing Guidelines. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

On April 16, 2003, defendant was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The charge in the indictment was based upon evidence that law enforcement officers had obtained in a search of defendant's home in Texas County, Missouri, on November 20, 2002. Defendant moved to suppress the evidence, which included, among other things, a .22 caliber pistol that had been found in his bedroom next to a spoon containing methamphetamine residue.

Defendant's motion to suppress was submitted to a United States magistrate judge.[2] The magistrate judge held an evidentiary hearing on the motion. The government's witnesses included: Fred Stenger, an investigator with the South Central Drug Task Force; Jimmy Willis, a methamphetamine investigator for the Texas County Sheriff's Department; and Dean Belshe, the Texas County Sheriff. Witnesses for the defense included: Cassandra Tharp, defendant's girlfriend; Pandee Johnson, defendant's sister-in-law; Lee Johnson, defendant's brother; Lloyd Amburn, defendant's uncle; and Gerald Clinton, defendant's neighbor. In addition, Mark

---

[2]The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

Loge, an investigator with the Federal Public Defender's Office, testified for the defense to identify several photographs taken in the vicinity of defendant's house. Following the evidentiary hearing, the magistrate judge issued a report in which he summarized the evidence presented by the parties. United States v. Amburn, No. 03-03047-01, slip op. at 2-10 (W. D. Mo. Sept. 8, 2003) (hereinafter "R&R").

As described by the magistrate judge, the government's evidence supported the following facts. On the night of November 19-20, 2002, investigators with the South Central Drug Task Force were conducting surveillance of defendant's residence based on tips and complaints received about unusual traffic patterns and suspected drug-related activity on the premises. While driving past the residence, which is set back approximately 100 yards from the road, Investigator Stenger noticed an odor of ether. Stenger is trained to recognize the smell of ether, which is used in the production of methamphetamine.[3] Later that night, Stenger observed a "burn pile" in defendant's yard, which he believed might be an indication that defendant was destroying evidence of a methamphetamine laboratory.

Meanwhile, officers had also been conducting surveillance at the residence of Melvin Courtney, approximately one and a half miles from defendant's house, based on information that drug-related activity might also be occurring there. At about 3:00 a.m., officers in a marked patrol car observed near defendant's house a vehicle that earlier had been seen at Courtney's house. The occupants of the vehicle were believed to be Mark Bryson and Rhonda Lee. As the marked patrol car approached the vehicle, it sped away across a field and through some fences. The patrol car pursued, and the officers observed items being thrown from the vehicle. The pursuit ended when the vehicle hit a tree and the occupants fled on foot. The officers did not pursue them. In the area around the abandoned vehicle, the officers recovered a

---

[3]On cross-examination, Stenger acknowledged that there was a large diesel truck parked across the street, which also could have been the source of the ether smell.

-3-

loaded rifle with a scope and some gas masks. There was a strong odor of ether in and around the vehicle. Identification belonging to Mark Bryson was found inside the vehicle.

In the early morning hours of November 20, 2002, officers went to Courtney's residence. Upon obtaining consent, the officers searched the premises and discovered evidence of a methamphetamine laboratory. Courtney told the officers that Bryson and Lee had been at his house during the afternoon of November 19th and had left at approximately 5:00 p.m. after talking about going to defendant's house to "cook a batch." Courtney confirmed that Bryson and Lee had left in the same vehicle that was the subject of the earlier pursuit.

Stenger returned to defendant's residence, where he encountered Sheriff Belshe, who reported seeing a second fire on defendant's property. In addition, the officers received information that an individual arrested on November 19, 2002, Grant Gabel, had admitted going to Courtney's house earlier that day to buy drugs. Gabel reportedly had told one of the officers that, while he was at Courtney's house, he was told to wait there and not to go to defendant's house, where he assumed methamphetamine was being produced.

The officers decided seek a warrant to search defendant's residence. Officer Stenger left to prepare the warrant application at the Texas County Sheriff's Office. In his supporting affidavit, he mentioned, among other things, the vehicle pursuit, the fires observed on defendant's property, and information received from Courtney, Gabel, and other unnamed sources about defendant's alleged involvement in methamphetamine production. The application and supporting documents were submitted to a judge, who issued a search warrant. Stenger received the warrant at approximately 2:00 p.m. and executed it at defendant's residence at approximately 2:30 p.m. on November 20, 2002.

Meanwhile, during the morning of November 20, 2002, officers learned that Rhonda Lee, who had fled with Mark Bryson after the car chase, had gotten a ride to defendant's house. They also received a report that an individual holding a gun had been seen on defendant's porch. Belshe was concerned about possible violence or destruction of evidence so he decided to secure the interior of defendant's residence. Belshe, accompanied by other officers, knocked on defendant's door. Pandee Johnson, defendant's sister-in-law, answered the door. Defendant's girlfriend, Cassandra Tharp, was also there. Pandee Johnson asked the officers if they had a search warrant. Although they did not have one, she let them in. Upon entering, Belshe heard defendant's voice from down the hall. Belshe found defendant in a bathroom, holding some syringes and a black bag. Belshe ordered defendant out of the bathroom but defendant refused, stating that he needed to use the bathroom. Belshe responded that defendant could do so after he (Belshe) had searched the bathroom. Belshe found in the tank of the toilet another black bag containing syringes, plastic bags, and containers of a white powdery substance. Defendant was placed under arrest for possession of methamphetamine and taken away.

The officers conducted a protective sweep of the house. They remained with Pandee Johnson and Cassandra Tharp while awaiting the arrival of the search warrant. Due to the cold weather, they decided to wait inside the house. When the officers asked the two women where defendant's brother, Lee Johnson, was, the women stated that he had left.

Once Stenger arrived with the warrant, the home was searched. During the search, officers found, among other things, evidence of methamphetamine use and manufacturing, a firearm in defendant's bedroom, and Lee Johnson hiding under a bed in another room.

The witnesses for the defense gave a different account of the events of November 19 and 20, 2002. According to the testimony of Pandee Johnson, when the officers knocked on the door and she answered, she asked the officers four times to

see a search warrant.  They told her that they did not need one.  She then tried to close the door, but the officers pushed it open.  They entered the home, handcuffed her, and placed her on the sofa, after which she wore the handcuffs for several minutes.  They began yelling for defendant and, upon finding him, arrested him and took him out of the house.  The officers then extensively searched the house for several hours before Stenger arrived with the search warrant.  Pandee Johnson, Cassandra Tharp, and Lee Johnson each testified that the officers opened, rummaged through, and emptied cabinets and drawers, and moved items around the house, prior to Stenger's arrival with the search warrant.  Lee Johnson testified that he was hiding under a bed throughout most of the search and that three officers looked under the bed where he was hiding without actually seeing him; a fourth officer finally spotted him several hours into their search.  Defendant's uncle, Lloyd Amburn, who lived near defendant, testified that he went to see what was going on at defendant's house after noticing police cars there.  Sheriff Belshe told him that they had arrested defendant and were going to search the house.  In addition, defendant's neighbor, Gerald Clinton, testified that, on the evening of November 19, 2002, he wanted to see if his truck would start because it had not been driven for several days and it was a cold night.  At approximately 7:30 p.m., he sprayed starter fluid in his truck and let the engine run for a period of time.  Later that night, at around 9:00 or 10:00 p.m., he went over to defendant's house to talk with Lee Johnson, who was in the back yard burning leaves.

The magistrate judge found the government's witnesses to be more credible than defendant's.  Based upon the totality of the evidence and his credibility assessments, the magistrate judge concluded that, prior to entering defendant's home, the officers had a reasonable belief that evidence therein might be destroyed.  R&R at 12.  Regarding the extensiveness of the officers' search of the premises, the magistrate judge found that, except for the search of the bathroom, the officers did no more than a protective sweep of the house prior to the issuance of the warrant.  Regarding the bathroom, the magistrate judge reasoned that Belshe's search was justified by exigent circumstances or search incident to arrest.  Id. at 13. Finally, with respect to Stenger's affidavit in support of the search warrant application, the

magistrate judge concluded that Stenger did not make any deliberately or recklessly false or misleading statements in the affidavit, and that the affidavit established probable cause to search defendant's residence for evidence of methamphetamine production and drug trafficking.  Id. at 14.  Accordingly, the magistrate judge recommended that defendant's motion to suppress be denied.  Id.

Upon independent review, the district court entered an order adopting the magistrate judge's findings of fact and conclusions of law and denying defendant's motion to suppress.  Id. (Oct. 30, 2003) (district court order).[4]

Pursuant to a written plea agreement, defendant pled guilty to the one count in the indictment, reserving his right to appeal the denial of his motion to suppress.  In addition, the plea agreement provided in part:

> The defendant agrees not to appeal or otherwise challenge the constitutionality or legality of the [United States] Sentencing Guidelines.  The defendant understands and acknowledges that his sentence will be determined and imposed pursuant to those Sentencing Guidelines.  Defendant is aware that a sentence imposed under the Sentencing Guidelines does not provide for parole.  The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum established for the offense.  The parties expressly waive the right to appeal or collaterally attack by post-conviction motion any sentencing issue, including the applicability of certain U.S. Sentencing Guidelines provisions, which have been addressed and agreed upon in this Plea Agreement, and which are set forth in this plea agreement.  Each party retains the right to appeal only

---

[4]Hereinafter the magistrate judge's findings of fact and conclusions of law will be attributed to the district court.

sentencing issues which have not been agreed upon or which have not been specifically addressed in the Plea Agreement.

Upon receiving defendant's guilty plea, the district court ordered the preparation of a presentence investigation report (PSR). The PSR recommended a total offense level of 21, which included a four-level increase under U.S.S.G. § 2K2.1(b)(5) ("If the defendant used or possessed any firearm . . . in connection with another felony offense . . . increase by 4 levels."). Defendant specifically objected to the four-level increase on grounds that there was no evidence or legal basis to establish that the firearm he possessed was possessed in connection with another felony offense. At the sentencing hearing, the district court found that defendant had possessed the pistol in connection with another felony offense, overruled defendant's objection, and applied the four-level increase under § 2K2.1(b)(5). See Sentencing Transcript at 16-17. The district court calculated defendant's total offense level as 21, and criminal history category IV, resulting in a sentencing range of 57 to 71 months. The district court sentenced defendant to 57 months in prison and three years of supervised release.

Three days after defendant's sentencing hearing, the Supreme Court issued its decision in Blakely v. Washington, 124 S. Ct. 2531 (2004) (Blakely), holding the State of Washington's sentencing guidelines unconstitutional under the Sixth Amendment. Defendant promptly filed a motion for reconsideration of his sentence in light of Blakely. The district court denied the motion, and defendant appealed.

## Discussion

*Motion to suppress*

In appealing the denial of his motion to suppress, defendant argues that the district court erred in holding that (1) exigent circumstances justified the officers' initial entry into his home, (2) the officers did not exceed the scope of a

constitutionally-permissible protective sweep prior to the issuance of the search warrant, (3) the affidavit submitted in support of the search warrant application was not deliberately or recklessly false or misleading, and (4) the search warrant was supported by probable cause.

"We review the district court's findings of historical facts for clear error, but the ultimate determination of whether the facts as found constitute exigent circumstances is reviewed de novo." United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003) (Kuenstler), cert. denied, 540 U.S. 1112 (2004). "The [exigent circumstances] exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996). "The analysis of whether this exception to the warrant requirement has been made out is an objective one 'focusing on what a reasonable, experienced police officer would believe.'" Kuenstler, 325 F.3d at 1021 (quoting In re Sealed Case 96-3167, 153 F.3d 759, 766 (D.C. Cir. 1998)).

Defendant disputes the district court's conclusion that the "officers reasonably believed that there was a legitimate concern regarding the destruction of evidence that justified their entry into defendant's residence to secure it." R&R at 12. Defendant argues that, by the time the officers decided to enter defendant's house without a warrant on the morning of November 20, 2002, at least an hour or two had passed since the second burn pile had been observed and, therefore, the officers could not reasonably have believed that evidence was about to be destroyed. We disagree.

The circumstances known to the officers at the time they decided to enter and secure the residence included the following. At least two sources had indicated that methamphetamine production would likely occur at defendant's house on or about the night of November 19-20, 2002. Two burn piles had been observed in defendant's yard within the previous twelve hours or so. An individual holding a firearm had reportedly been seen on the porch of defendant's house. Rhonda Lee, who had been

at Courtney's house on November 19th, had gotten a ride to defendant's house after evading the police during a night-time car chase.

We hold that, under the totality of the circumstances, it was reasonable for the officers to believe that destruction of evidence was likely to occur and could be prevented by entering and securing the premises. The district court did not err in concluding that exigent circumstances justified the officers' warrantless entry into defendant's home.

Defendant next argues that, even if the officers were justified in entering and securing the premises, and in searching the bathroom, they exceeded the scope of what was constitutionally permissible by conducting an extensive search of the entire house prior to obtaining the search warrant. On this issue, the district court made the following findings.

> There was no credible evidence presented at the hearing to support the theory that the officers' actions exceeded the boundaries of a protective sweep once they entered defendant's residence. . . . Other than the bare assertions of Pandee Johnson, Lee Johnson, and Cassie Tharp, there was nothing introduced to support their allegations of a widespread, extensive search of the entire residence. The officers in the house denied that they searched, and there was testimony that they would have been outside waiting on the warrant, but for the chilly weather. They testified that the weapon and Mr. [Lee] Johnson were found after the search warrant arrived. There was no testimony to dispute this. Rather, the three occupants of the house testified about an extensive, intrusive search of the entire residence. It is hard to find the two women's statements credible regarding what they claimed was going on in the bathrooms, when they admitted to being in the living room or on the porch the majority of the time. It is even more difficult to believe that Mr. Johnson could have seen a widespread search from

-10-

under the bed. Additionally, the fact that he wasn't even found for several hours, by his own admission, would certainly belie the claims that the officers searched extensively through the entire house.

R&R at 13.

The district court's determination of witness credibility is "virtually unreviewable on appeal because it is 'preeminently the job of the finder of fact.'" United States v. Rayl, 270 F.3d 709, 713 (8th Cir. 2001) (quoting United States v. E.R.B., 86 F.3d 129, 130 (8th Cir. 1996)). In light of the district court's credibility findings and the undisputed facts highlighted by the district court – for example, the fact that Lee Johnson, who was hiding under a bed, was not found for several hours – we hold that the district court did not clearly err in finding that the search was not conducted until after the search warrant was issued.

Defendant challenges the validity of the search warrant on grounds that Stenger's affidavit contained deliberately or recklessly false or misleading statements and omissions and that, absent these misstatements and omissions, there would not have been probable cause to support the search warrant.

An affidavit in support of a search warrant violates the Fourth Amendment if it contains "allegations of deliberate falsehood or of reckless disregard for the truth." Franks v. Delaware, 438 U.S. 154, 171 (1978) (Franks). There is, however, "a presumption of validity with respect to the affidavit supporting the search warrant." Id. To prove a Franks violation, defendant must show: "(1) that a 'false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,' and (2) that 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.'" United States v. Searcy, 181 F.3d 975, 980 (8th Cir. 1999) (Searcy) (quoting Franks, 438 U.S. at 155-56). On the question of probable cause, we again review the district court's factual findings for clear error, and review conclusions of law *de novo*.

United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001). "We give substantial deference to a magistrate[ judge]'s determination of probable cause and will not set aside that determination 'unless the issuing judge lacked a substantial basis for concluding that probable cause existed.'" Searcy, 181 F.3d at 981 (quoting United States v. Edmiston, 46 F.3d 786, 788 (8th Cir. 1995)). We consider the "totality of the circumstances . . . in determining whether probable cause exists to support a search warrant." United States v. Hernandez Leon, 379 F.3d 1024, 1027 (8th Cir. 2004).

Defendant asserts that Stenger's affidavit was deliberately or recklessly false or misleading because: (1) he alleged smelling ether coming from defendant's house without acknowledging that, at the time he smelled the odor, he was standing approximately 100 yards from defendant's house and there was also a diesel truck nearby – a "more obvious" source of the ether smell; (2) he asserted that "several sources" had indicated that methamphetamine production would be taking place at defendant's house, without acknowledging that there were only two such "sources" and that these "sources" had no track record for reliability; (3) he failed to mention that there were several other houses on Amburn Road; and (4) he failed to acknowledge that there was no link between defendant's residence and the physical evidence recovered from the abandoned vehicle previously occupied by Mark Bryson and Rhonda Lee. Brief for Appellant at 34-35. Defendant concludes: "Simply put, the affidavit is based on nothing more than burning garbage, an easily explained source of ether, the testimony of two persons with no track record of believability, and an irrelevant vehicle chase. This does not meet the requirements of probable cause." Id. at 35.

In addressing these issues, the district court rendered the following findings of fact and conclusions of law.

> Officer Stenger stated repeatedly that he mainly relied on statements made by persons with whom he had spoken, with whom he had past experience, and who had been truthful regarding their own

-12-

culpability. Therefore, he believed them to be reliable regarding information they provided about defendant. The Court is satisfied that the statements referred to were not false or recklessly made. . . . [Stenger's] statement that he could smell ether, based on his experience with methamphetamine production, was convincing. The Court finds, based on the credible testimony of Officer Stenger, that he did not make a false statement regarding having smelled ether emanating from defendant's residence. Accordingly, defendant has failed to establish that the affidavit contained deliberately false or reckless statements. Further, the Court is satisfied that the affidavit established probable cause to search defendant's residence for evidence of methamphetamine production and drug trafficking.

R&R at 14.

Upon review, we agree with the district court that Stenger did not make any knowingly or intentionally false statements in his affidavit, nor did he demonstrate a reckless disregard for the truth. We further conclude that the district court did not clearly err in its determination of Stenger's credibility or in its findings of fact related to probable cause. The district court had a substantial basis for concluding that probable cause to search existed under the totality of the circumstances. The district court's denial of the motion to suppress is affirmed.

*Sentencing issues*

In appealing his sentence, defendant argues that the federal sentencing guidelines as a whole are unconstitutional,[5] the application of U.S.S.G. § 2K2.1(b)(5)

---

[5]Defendant's briefs on appeal were filed before the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005).

violated his Sixth Amendment rights, and the district court erred in applying § 2K2.1(b)(5) where "there was no temporal or proximal connection" between the firearm he possessed and another felony offense such as "possession of methamphetamine or possession of materials used in the production of methamphetamine." Brief for Appellant at 5, 40.

Defendant's first two arguments are challenges to the constitutionality of the federal sentencing guidelines. As noted above, the plea agreement included, among other things, an express agreement by defendant "not to appeal or otherwise challenge the constitutionality or legality of the Sentencing Guidelines." In view of that language, we hold that defendant waived his first two sentencing arguments on appeal. Moreover, "[t]he fact that [defendant] did not anticipate the Blakely or Booker rulings at the time he entered the plea agreement does not place the issue outside the scope of the waiver." United States v. Killgo, 397 F.3d 628, 629 n.2 (8th Cir. 2005).

By contrast, defendant expressly preserved in the plea agreement his right to appeal "sentencing issues which have not been agreed upon or which have not been specifically addressed in the Plea Agreement." Based upon that language, we consider defendant's argument challenging the application of § 2K2.1(b)(5), which was based upon the district court's conclusion that he possessed the gun in connection with another felony offense. That conclusion is a finding of fact which we review for clear error. United States v. Regans, 125 F.3d 685, 686 (8th Cir. 1997) (Regans) (standard of review), cert. denied, 523 U.S. 1065 (1998). The phrase "in connection with" in this context "means that the firearm must have some purpose or effect with respect to, and must facilitate, or have the potential of facilitating, another felony offense; its presence or involvement cannot be the result of accident or coincidence." United States v. Fredrickson, 195 F.3d 438, 439 (8th Cir. 1999) (per curiam) (internal quotation marks omitted) (quoting Regans, 125 F.3d at 686).

In the present case, defendant maintains that the only evidence available to the district court on which it could make the relevant finding included statements in the PSR, to which he admits he did not object, and testimony which he characterizes as "largely irrelevant." Brief for Appellant at 43. The evidence, he suggests, failed to connect him to the drug-related equipment and paraphernalia found at the scene and, moreover, established that there were three other people living in the house. Consequently, he argues, the district court could not reasonably conclude that he possessed the firearm in connection with another felony offense. See id.

We have previously held that a § 2K2.1(b)(5) enhancement may be assessed "where the defendant possessed a firearm at the same time he was in possession of a small amount of heroin for personal use." United States v. Martinez, 258 F.3d 760, 762 (8th Cir. 2001) (Martinez) (citing Regans, 125 F.3d at 686); see also United States v. Bell, 310 F.3d 604, 605-06 (8th Cir. 2002) (per curiam) (affirming § 2K2.1(b)(5) enhancement where the "unobjected-to facts" in the presentence report showed that there was a loaded revolver under the mattress of the defendant's bed and two grams of cocaine were found in a pair of shorts on the bedroom floor). In Martinez, 258 F.3d at 762, we reasoned that, whether a defendant is manufacturing drugs or merely possessing them for personal consumption, there is an "increased risk of violence whenever guns are in the possession of persons engaged in committing drug felonies."

In the present case, defendant did not object to any of the facts stated in the PSR. Rather, he objected to the four-level enhancement itself on the ground that the offense conduct as stated in the PSR did not sufficiently establish a connection between the firearm and the drug-related evidence found at the scene.

The PSR's statement of the offense conduct notes that the officers found, under defendant's bed, a fully-loaded .22 caliber semiautomatic pistol along with a spoon which field-tested positive for methamphetamine. The PSR also notes that items commonly associated with the production of methamphetamine were found at the

residence and that defendant himself admitted he (1) had been using methamphetamine on and off for eleven years, (2) had manufactured it five or six times within the past year, and (3) had sold it in the past. In view of these "unobjected-to facts" establishing a likelihood that defendant had been engaging in drug violations at the residence, it was reasonable for the district court to conclude that defendant possessed the gun found in his bedroom "in connection with" another felony offense. Cf. United States v. Agee, 333 F.3d 864, 866 (8th Cir. 2003) ("We agree with the district court that, although police took [the defendant's] firearm from him outside of his residence, it is reasonable to infer that he had possessed the gun during prior drug activities inside the residence. Regardless of whether those activities were manufacturing or simple possession and consumption, the enhancement was proper."). In the present case, the district court did not clearly err in its factual findings and was warranted in imposing upon defendant the § 2K2.1(b)(5) four-level enhancement. See id. ("The enhancement must be imposed unless it is clearly improbable that he possessed the firearm in connection with another felony offense.").

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

-16-