# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1412

_____

United States of America

*Plaintiff - Appellee*

v.

Darron Javon Mayo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: October 19, 2023
Filed: March 28, 2024

_____

Before SMITH, Chief Judge,[1] LOKEN and COLLOTON,[2] Circuit Judges.

_____

SMITH, Chief Judge.

Darron Mayo appeals the denial of his motion to suppress evidence obtained from a hidden camera police officers placed across from his apartment door. Officers used some of the evidence obtained from the camera in a probable cause affidavit

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

supporting an application for a search warrant of Mayo's apartment. We affirm the district court[3] because the probable cause affidavit was sufficient when ignoring evidence gathered from the hidden camera.

## I. *Background*

In August 2021, off-duty police officers assisted security personnel at a hip-hop concert in Moline, Illinois. Concert officials asked the officers to secure an area of the parking lot in anticipation of the music artist's arrival. As the officers cleared the area, they noticed a Nissan sedan in the corner of the lot.

While securing the Nissan, officers found contraband. They observed, in plain view, a clear plastic bag containing ecstasy and a digital scale on the center console of the Nissan. They also noticed that keys to the vehicle were on the center console and that the passenger door was ajar. Officers discovered that a fanny pack was preventing the door from closing. When the officers picked up the fanny pack to return it to the vehicle, they felt a firearm inside. After returning the fanny pack to the vehicle, a tow truck transported the Nissan to the Moline Police Department. After the tow truck's departure, two men approached the officers asking about the vehicle's whereabouts. The officers told them a tow truck took the vehicle, and the men departed.

Officers obtained a search warrant and searched the vehicle. They recovered ten grams of marijuana, approximately two grams of ecstasy pills, a digital scale, and two firearms. An investigation determined that the firearms were stolen, and police discovered a fingerprint on one of the firearm's magazines. The fingerprint belonged to Darron Mayo. Police then obtained video surveillance showing Mayo walking away from the Nissan on the night of the concert. Based on these discoveries, and because utility records connected Mayo to an apartment in Davenport, Iowa, the Davenport Police Department began investigating him.

---

[3]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Mayo's apartment was on the ground floor, connected to a shared hallway that anyone could enter via two exterior doors at either end of the building. Officers observed that at least one of the doors remained unlocked. During the investigation, officers entered Mayo's apartment building and installed a camera in the shared hallway on the wall across from Mayo's apartment door. Police disguised the motion-activated camera as a fire alarm. The camera stored recorded footage on a memory card, and officers could not view the camera's footage in real time. This camera recorded people entering and exiting the apartment. On one occasion, the camera recorded Mayo selling marijuana.

Officers also stopped Mayo's vehicle, a Chevrolet Impala, for a suspected equipment violation. When asked for identification, Mayo provided officers with a false name. And officers noticed marijuana shake in the center console. The officers placed Mayo in the backseat of a police car while they searched his vehicle, and a dog sniff indicated the presence of drugs. Seated in the police car, Mayo made several phone calls with their audio recorded by the car's dash camera. In one call, Mayo urged the recipient not to tell the police his real name. In another, Mayo told someone that "when you get to the crib bro you got to get all that shit out of the crib man there is shit everywhere." *United States v. Mayo*, 615 F. Supp. 3d 914, 918 (S.D. Iowa 2022).

Thereafter, police obtained a search warrant for Mayo's apartment. The search warrant affidavit contained evidence gathered from the hidden camera police placed across from Mayo's apartment door.[4] During the search, police discovered marijuana, cocaine, clonazolam, drug paraphernalia, a large amount of cash, a loaded nine-millimeter pistol, and an iPhone. Upon obtaining a search warrant for the

---

[4]The probable cause affidavit introduced almost all references to evidence obtained via the hidden camera by saying "members of the Davenport Police Department Narcotics Unit were conducting surveillance at [Mayo's residence] and . . . observed . . . ." *See, e.g.*, R. Doc. 35, at 6. That phrasing suggests that the police officers obscured their use of a hidden camera from the court.

iPhone, officers found therein photographs and videos of Mayo brandishing firearms, large amounts of cash, and marijuana.

After searching the apartment, police arrested Mayo and charged him with multiple crimes. Mayo filed a motion to suppress contending, *inter alia*, that footage gathered from the hidden camera was obtained in violation of his Fourth Amendment right against unreasonable searches and seizures. The district court denied his motion. Mayo pleaded guilty pursuant to a conditional plea agreement that reserved his right to appeal the denial of his suppression motion.

## II. *Discussion*

On appeal, Mayo offers three arguments challenging the district court's denial of his motion to suppress. First, the footage obtained by police from the hidden camera violated his Fourth Amendment right. Second, the search warrant is deficient after removing evidence obtained from the camera. And third, the good-faith exception to the exclusionary rule does not apply. We will assume, without deciding, that the evidence gathered from the hidden camera is unconstitutional and address Mayo's second argument.

We use "a mixed standard of review [for] the denial of a motion to suppress," "review[ing] the district court's factual findings for clear error and the denial of the suppression motion de novo." *United States v. Stevenson*, 66 F.4th 1143, 1145 (8th Cir. 2023). We "may affirm the district court's denial of a motion to suppress on any ground supported by the record." *Id.* (quoting *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021)).

When police use unconstitutionally gathered evidence in a search warrant affidavit, we evaluate the affidavit's sufficiency for probable cause after we rid it of that evidence. *United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004) ("The sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information.").

When determining whether a warrant affidavit is sufficient for probable cause, "our role is to ensure that the issuing [court] had a substantial basis for concluding that probable cause existed." *United States v. Juneau*, 73 F.4th 607, 614 (8th Cir. 2023) (internal quotation marks omitted). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *United States v. Gater*, 868 F.3d 657, 660 (8th Cir. 2017)). The probable-cause inquiry "is not a high bar, [and] we pay great deference to the issuing [court]'s determination." *Id.* (cleaned up).

We hold that when the search warrant affidavit is scrubbed of information gathered from the hidden camera, enough facts remain to support probable cause. Four sets of related facts support our conclusion. First, various drugs, a digital scale, and two stolen handguns were found in a Nissan towed from a concert. Second, police identified Mayo as a person associated with the Nissan because his fingerprints were found on a handgun magazine, and a video recording linked him to the vehicle. Third, police stopped Mayo while he was driving an Impala. During that stop, Mayo gave a fake name, marijuana shake was found in the center console, a dog sniff indicated the presence of drugs in the car, and a police dash camera recorded cell phone calls that Mayo made after officers placed him in the back of a squad car. In one of those calls, Mayo told the person not to tell the police his real name. And in another call he stated, "[W]hen you get to the crib bro you got to get all that shit out of the crib man there is shit everywhere." *Mayo*, 615 F. Supp. 3d at 918. Fourth, utilities in Mayo's name connected him to the apartment in the search warrant application. These four sets of facts indicated a fair probability that contraband or evidence of a crime would be found in his apartment.

Mayo argues that probable cause does not exist because there are no facts that tie illegal activity to his home. We reject this argument. The hidden camera footage was not needed to tie Mayo to the apartment; the utility records suffice. Further,

> [a]lthough we have not adopted a per se rule to the effect that probable
> cause to arrest a drug trafficker establishes an inference that records,

paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence, we have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity.

*United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007).

The search warrant affidavit satisfies *Ross*. The officer stated in the affidavit, "It is common for individuals involved in the distribution of narcotics to store their narcotics and proceeds from narcotics sales at their residence." R. Doc. 35, at 11. Moreover, the affidavit described the evidence of drug distribution found in the Nissan and Impala. These facts show illicit drug distribution activities sufficient to support probable cause to search the apartment. *See also United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence.").

Therefore, the probable cause affidavit remains sufficient for issuance of a search warrant even if we assume that the hidden camera footage is unconstitutional.

## III. *Conclusion*

The district court did not err when it denied Mayo's motion to suppress because the probable cause affidavit is sufficient even when the evidence from the hidden camera is omitted. Therefore, we affirm the district court.

———————————————