# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-2931

_____

United States of America

*Plaintiff - Appellee*

v.

Lynda Charles

*Defendant - Appellant*

_____

No. 23-2932

_____

United States of America

*Plaintiff - Appellee*

v.

Rosie Bryant

*Defendant - Appellant*

_____

No. 23-2933
_____

United States of America

*Plaintiff - Appellee*

v.

Delois Bryant

*Defendant - Appellant*
_____

No. 23-2934
_____

United States of America

*Plaintiff - Appellee*

v.

Brenda Sherpell

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: September 25, 2024
Filed: January 15, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.
_____

-2-

SHEPHERD, Circuit Judge.

Four septuagenarian sisters were accused of defrauding the United States by falsely claiming benefits under two different federal claim programs. After several months, each sister pled guilty to one count of conspiracy. In their plea agreements, each of them preserved the right to appeal two pretrial rulings by the district court:[1] the denial of a motion to suppress and the denial of a motion to dismiss the indictment for untimeliness. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Appellants are four sisters: Lynda Charles, Rosie Bryant, Delois Bryant, and Brenda Sherpell. The sisters' charges stem from two government programs: a settlement program and a claim program.

The first program was the Black Farmer's Discrimination Litigation program (BFDL). The BFDL program arose out of the Pigford Litigation,[2] a class action lawsuit brought by black farmers against the United States Department of Agriculture in 1997 alleging that the USDA discriminated against them based on their race when they applied for and received various farm benefits. After years of litigation and multiple settlements, a non-judicial claims process was created. Under this settlement and claims process, BFDL claimants were required to show several things in order to make a claim, including that they had been discriminated against and that they had attempted to participate in a prior settlement in the case. Successful claimants were entitled to $62,500, $50,000 of which was made payable to the

---

[1]The Honorable D. P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

[2]Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999), aff'd, 206 F.3d 1212 (D.C. Cir. 2000), and enforcement denied sub nom. Pigford v. Schafer, 536 F. Supp. 2d 1 (D.D.C. 2008).

claimant and $12,500 of which was transferred directly to the Internal Revenue Service as a tax withholding.

The second program was the Hispanic and Women Farmers and Ranchers (HWFR) claim program. Like the BFDL, the HWFR program stemmed from lawsuits brought against the USDA alleging discrimination relating to farm benefits on the basis of race, ethnicity, and gender. And like in the BFDL, HWFR claimants could make a claim for financial relief if they showed they had applied for participation in a USDA benefit program and believed they had been discriminated against.

Appellants conspired to defraud the USDA by soliciting people to file fake claims in both programs. The claims falsely asserted that the claimants were entitled to funds based on past discrimination against them. Each Appellant was involved in dozens of fraudulent BFDL and HWFR claims and received more than a million dollars as a result of involvement in the scheme.[3] Additionally, they each paid a co-conspirator to prepare fraudulent tax returns for HWFR claimants to guarantee that each claimant received the maximum refund, even when those claimants weren't eligible for it.[4] Finally, all of the sisters except Sherpell filed false personal income

---

[3]Charles admitted to being involved with at least 73 fraudulent claims (46 BFDL and 27 HWFR) and to receiving at least $2,176,000 from her involvement. Rosie Bryant admitted to being involved with at least 71 fraudulent claims (32 BFDL and 39 HWFR) and to receiving at least $2,176,000 from her involvement with the scheme. Delois Bryant admitted to being involved with at least 46 fraudulent claims (15 BFDL and 31 HWFR) and to receiving at least $2,176,000 from her involvement. Sherpell admitted to being involved with at least 31 fraudulent claims (20 BFDL and 11 HWFR) and to receiving at least $1,700,000 from her involvement.

[4]Charles admitted to being involved with at least 22 false tax returns containing false items totaling $1,335,920. Rosie Bryant admitted to being involved with at least 35 false tax returns for a total loss of $437,500. Delois Bryant admitted to being involved with at least 18 false tax returns for a total loss of $225,000.

-4-

tax returns for four different years, collectively failing to report hundreds of thousands of dollars each.[5]

In December 2019, following a lengthy government investigation, a grand jury returned a 115-count indictment naming Appellants and others as defendants. The indictment charged all four sisters with 8 counts of mail fraud (for mailings occurring in 2015 and 2016) and 82 counts of advising the preparation and presentation of false tax returns. It further charged three of the sisters with 12 counts of tax evasion and 12 counts of money laundering. Eventually, in mid-2022, the government reached plea agreements with each of the Appellants. Under these agreements, the government filed separate superseding informations charging each Appellant with one count of conspiracy to defraud the United States. Each sister pled guilty to the applicable superseding information, and the charges in the original indictment were dismissed.

Prior to reaching those plea agreements, however, Appellants jointly filed two relevant pretrial motions: a motion to suppress and a motion to dismiss.

The motion to suppress challenged the searches pursuant to search warrants of six different properties: (1) a residence or office building owned by Destiny by Design, a nonprofit entity set up by one of the sisters, (2) the law office of a lawyer involved in the scheme, (3) Lynda Charles's home, (4) Rosie Bryant's home, and (5) and (6) two homes tied to Delois Bryant. Appellants argue the evidence seized pursuant to the warrants should have been suppressed because the warrants were based on affidavits containing information that was allegedly unconstitutionally obtained.

---

Sherpell admitted to being involved with at least 12 false tax returns for a total loss of $150,000.

[5]Charles admitted to failing to report $752,476 in income. Rosie Bryant admitted to failing to report $1,305,786 in income. Delois Bryant admitted to failing to report $516,267 in income.

At issue—because it was included in all the affidavits—is USDA Special Agent Kevin Porter's visit to the building owned by Destiny by Design, located at 105 East F Avenue in North Little Rock. The address had been listed by an associate of Charles's as the associate's home address and as the address for two HWFR claims. Porter described the building as appearing to be "an old house that was being used as an office." He visited the building and knocked on the door several times with no answer. Without obtaining a search warrant, he then looked through the window and saw a white sheet of paper "[l]ying just inside the window" that listed several names and numbers, some of which Porter recognized as belonging to HWFR claimants. The affidavits noted that he recorded the names and numbers, and investigators later cross-referenced those to spreadsheets showing they were HWFR claimants. In their motion to suppress, Appellants argued that by peering through the building's window and obtaining information without a search warrant, Porter violated the Fourth Amendment and thus any evidence seized as a result should be suppressed.

Without holding an evidentiary hearing, the district court denied the motion to suppress on two bases. The court first determined that none of the sisters had standing to challenge a search of 105 East F Avenue because none of them "owned the property, lived there, worked there, had any possessory interest in the papers or items seized, or otherwise had a personal expectation of privacy that was violated." The court further noted that even assuming there had been a Fourth Amendment violation, suppression would not be the appropriate remedy for many[6] of the search warrants issued because even excluding the challenged information, "the affidavits still provided probable cause."

Appellants also made reference to an evidentiary hearing in their motion to suppress filings, which they claim gave them a right to a hearing on the matter. Their reply brief was titled "Defendants' Reply to the United States Response to the Bryant

[6]The district court only made this determination as to the four houses owned by or connected to the sisters. As to the Destiny by Design building and the law office, the district court resolved the issue entirely on standing.

Sisters' Motion to Suppress Physical Evidence and *Request for Hearing*," and their prayer for relief stated "defendants pray the court enter an order suppressing the evidence in this matter . . . as may be argued in any *hearing* of this matter." (emphasis added). The district court's opinion did not address a request for an evidentiary hearing. The Appellants then filed a motion "to Set Aside and for Reconsideration of the Court's Prior Orders Made in Advance of the Pretrial Motion Hearing Set in this Matter." They requested that time be set aside at an upcoming hearing to allow Defendants to proffer evidence on the issues "as they would have done initially in the previously scheduled hearing." The court denied the motion, noting it did not recall any request for an evidentiary hearing.

The other relevant pretrial motion, a motion to dismiss the indictment, argued in relevant part that the indictment was untimely and that the court thus lacked jurisdiction. The Appellants asserted that the applicable five-year statutory limitations period ended long before Appellants were charged with eight counts of mail fraud. Under their argument, the limitations period began to run on the date the last overt act of the crimes was completed. The district court rejected this argument, noting that "[b]inding Eighth Circuit precedent holds that the statute of limitations for mail fraud begins to run on the date of the mailing," not the date of the last overt act.

Following the pretrial motions, Appellants each pled guilty pursuant to a plea agreement, preserving the right to appeal the rulings on their motions to suppress and to dismiss. The Appellants were sentenced to 24 months' imprisonment and 2 years of supervised release each and ordered to pay restitution, and they now appeal the denial of the motion to suppress, the denial of the motion to dismiss, and the denial of a hearing on both the motion to suppress and the motion to dismiss.

II.

Appellants first argue that the district court erred in denying their motion to suppress. In considering denials of motions to suppress evidence, a "mixed standard

of review" applies. United States v. Williams, 777 F.3d 1013, 1015 (8th Cir. 2015). "[W]e review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Juneau, 73 F.4th 607, 613 (8th Cir. 2023) (citation omitted).

Appellants contest the district court's determination that they lack standing to bring this challenge. The district court determined they lacked standing because the sisters had not established "that any of them owned the property, lived there, worked there, had any possessory interest in the papers or items seized, or otherwise had a personal expectation of privacy that was violated." The court further noted that "[b]eing an organizer or officer of a corporation . . . does not automatically confer standing to challenge a search of corporate property," suggesting the court viewed the building as an office or business rather than a home. The sisters push back, arguing both that (1) the building was actually a residential space where they conducted business—which provides greater Fourth Amendment protections than an office—and (2) even if it were a business building and not a residential space, Appellants have enough ties there to establish a reasonable expectation of privacy.

We need not resolve whether Appellants have standing to challenge the search because the challenged affidavit was sufficient to support the search warrants. When a warrant is issued based on an affidavit that contained unlawfully seized information, "[t]he sufficiency of [the] warrant affidavit . . . is evaluated after deleting that information." United States v. Hernandez Leon, 379 F.3d 1024, 1027 (8th Cir. 2004); see also United States v. Mayo, 97 F.4th 552, 555 (8th Cir. 2024) ("When police use unconstitutionally gathered evidence in a search warrant affidavit, we evaluate the affidavit's sufficiency for probable cause after we rid it of that evidence."). Thus, suppression is the proper remedy here if—even assuming that the officer's conduct was unconstitutional and that the Appellants have standing to challenge it—after deleting any illegally obtained information, the affidavit contained insufficient information to support a search warrant.

When evaluating the sufficiency of a warrant affidavit for probable cause, "our role is to ensure that the issuing [court] had a substantial basis for concluding that probable cause existed." Mayo, 97 F.4th at 555 (citation omitted). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Gater, 868 F.3d 657, 660 (8th Cir. 2017) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Probable cause is "not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).

Here, the affidavits supporting all six of the search warrants are sufficient to establish probable cause even absent Agent Porter's observations at 105 East F Avenue. As the district court noted, the affidavits for the four houses owned by or closely connected to the sisters "laid out in detail allegations about the sisters' allegedly helping folks submit false claims, being paid a portion of settlement payments, assisting some claimants with false returns in an effort to recover taxes withheld from their settlement checks, and being paid a portion of refunded taxes" as well as showing that "money from HWFR claimants had been deposited into the Bryant sisters' bank accounts and that financial records for those accounts had been mailed to each of the addresses to be searched." Appellants do not challenge these findings. And the affidavits for the remaining two properties are sufficient for the same reasons. Because the affidavits were sufficient to support the warrants even without the contested information, we need not determine whether Appellants have standing to bring this challenge or whether the officer's conduct was unlawful. Thus, the district court properly denied the motion to suppress.

III.

Appellants next argue the district court should have granted the motion to dismiss the indictment as barred by the statutory limitations period. We review the denial of a motion to dismiss an indictment de novo. United States v. Yielding, 657 F.3d 688, 702 (8th Cir. 2011).

Appellants argue the first eight counts of the indictment, which charged aiding and abetting mail fraud were not charged within the five-year statute of limitations. Notably, Appellants do not argue that the charges were outside the limitations period for aiding and abetting mail fraud. Rather, they contend that "the aiding and abetting charge was essentially a conspiracy," and that it was barred by the statutory limitations period for conspiracy. Appellants' Br. 20. Aiding and abetting mail fraud and conspiracy are both subject to a five-year statute of limitations. See United States v. Bennett, 765 F.3d 887, 893 (8th Cir. 2014) ("The five-year statute of limitations prescribed by 18 U.S.C. § 3282 governs both [mail fraud and conspiracy]."); see also 18 U.S.C. § 2 (noting that anyone who aids and abets is punishable as a principal). However, the limitations period begins to run at different times for the two crimes. See Bennett, 765 F.3d at 895. In mail fraud, the limitations period begins running on "the date of mailing." Id. at 894 (citation omitted). In a conspiracy charge, however, "the limitations period begins to run from the occurrence of the last overt act committed in furtherance of the conspiracy that is set forth in the indictment." Id. at 895 (citation omitted).

Here, the charges were undisputably filed within the five-year limitations period for aiding and abetting mail fraud. The indictment alleges the mailings took place from July 2015 through January 2016. The indictment was filed on December 5, 2019. Thus, the mailings all occurred within the five years prior to the indictment.

Nor is Appellants' argument that the aiding and abetting charges were "essentially . . . conspiracy" charges availing. Conspiracy is a separate and distinct crime from aiding and abetting. See United States v. Mueller, 663 F.2d 811, 813 (8th Cir. 1981). Prosecutors have broad discretion on whether and how to file charges, including on "what charge to file." United States v. Jacobs, 4 F.3d 603, 604 (8th Cir. 1993) (per curiam) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)). Here, the government chose to file aiding and abetting mail fraud charges. Even if the prosecutor made that decision to avoid the potential problems posed by charging the same actions as conspiracy, that decision "generally rests entirely in his discretion." See id. at 604 (quoting Bordenkircher, 434 U.S. at 364). Because the

aiding and abetting mail fraud charges were filed within five years of the mailings, the district court properly denied the motion to dismiss the indictment as untimely.

IV.

Finally, Appellants argue that the district court erred by declining to hold a hearing on the motion to suppress and the motion to dismiss the indictment. This Court reviews a district court's denial of a requested evidentiary hearing for abuse of discretion. United States v. Stevenson, 727 F.3d 826, 830 (8th Cir. 2013).

A district court is only required to hold an evidentiary hearing "when the moving papers are sufficiently definite, specific, and detailed to establish a contested issue of fact." Id. Hearings are unnecessary "if it can be determined that suppression is improper as a matter of law." United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987) (citation omitted). Appellants assert that they raised multiple contested issues of fact as to the motion to suppress. The primary alleged dispute is as to whether the building that Special Agent Porter peered into—105 East F Avenue— was a commercial or residential building. Appellants further assert a dispute of fact as to whether the windows were mirrored, which could call into question the applicability of the plain view doctrine.

Neither of these alleged disputes required the district court to hold an evidentiary hearing on the motion to suppress. While there may be a dispute of fact as to how to properly characterize the building, the district court did not need to resolve that dispute because the affidavits were sufficient even absent the challenged peek through the window. Thus, the alleged dispute of fact was immaterial, and a hearing was not warranted. Furthermore, whether the windows were mirrored pertains to the lawfulness of the agent's behavior. Because the district court resolved the issue without considering the lawfulness of the agent's conduct, no evidentiary hearing was required on that question. Appellants further argue that because their "request" for a hearing was unopposed, the district court should have granted the hearing. But the test for abuse of discretion in declining to hold an evidentiary

hearing only asks whether the hearing was *necessary*, not whether it was *requested*. See <u>Stevenson</u>, 727 F.3d at 830.

Finally, the district court did not abuse its discretion in declining to hold a hearing on the motion to dismiss the indictment. Appellants do not dispute that they did not ask for a hearing on the motion to dismiss the indictment, and they allege no disputed facts as to the applicable limitations period. <u>See</u> <u>McDonough v. Anoka Cnty.</u>, 799 F.3d 931, 939-40 (8th Cir. 2015) (noting that the application of a statute of limitations is a question of law).

V.

For the foregoing reasons, we affirm.

_____