# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1557

_____

United States of America,      *
          *
        Appellee,          *
          *   Appeal from the United States
     v.                *   District Court for the District of
          *   Minnesota.
Michael John Walker,        *
          *
        Appellant.         *

_____

Submitted: September 16, 2005
Filed: November 17, 2005

_____

Before MURPHY, BRIGHT, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Michael John Walker appeals his conviction for possession of an unregistered firearm in violation of the National Firearms Act (NFA), specifically 26 U.S.C. §§ 5845(f), 5861(d) and 5871. Walker was indicted both for being a felon in possession of a firearm and for possession of an unregistered firearm based on his possession of Molotov cocktails, and he was found guilty of both offenses by a jury. After the district court[1] dismissed the first count for insufficient proof that the Molotov cocktail ingredients had moved in interstate commerce, Walker was sentenced to ten years

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

imprisonment on the second count. He contends on appeal that the court erred by admitting evidence of his prior conviction for making terroristic threats and by failing to give two of his requested jury instructions. We affirm.

On January 17, 2004 Minneapolis police and firefighters responded to an emergency call from the residence of Walker's former wife, Julie Crawford. When they arrived at her residence, they discovered fires on the front porch and in the backyard. They also saw burn patterns on a camper owned by Lonnie Allen, who was staying with Crawford at the time and had previously been married to her. They discovered two improvised incendiary bombs or Molotov cocktails, which had been made from Starbucks Frappucino coffee bottles filled with gasoline and wicked with blue rags.

At trial a neighbor testified that on the evening of the fires she had seen a man walking in the middle of the street with three bottles. Another neighbor described seeing a man throw an object towards Crawford's house and then crouch down and try to light something; his jacket caught fire and he put out the flames with his hand. Crawford's daughter Elizabeth Allen and her boyfriend Joshua Lewis were both in the house at the time of the attack, and they testified that they had seen Walker outside shortly before the attack. Joshua reported that Walker had yelled, "Josh, you better get out of the house!" before he lit what he was carrying.

Walker and Crawford had been married from 1993 to 1995 and had a long and tumultuous relationship. Walker was convicted in 1994 of making felony terroristic threats for telling Crawford he would kill her and put her in a body bag. Despite several attempts to reconcile, Crawford finally ended their relationship on December 19, 2003. Walker responded by presenting her with a list of demands, insisting she sign them. Crawford refused and subsequently obtained a restraining order.

Crawford did not hear from Walker again until shortly before the firebombing. He called to tell her that she had better comply with his demands or "hope they were on vacation." After the fires Walker made a number of calls to Crawford's home and her cell phone. In one call he left a message saying "I hope everyone got out ok because you know what, it's a great day for dying." When he reached her on the phone, Crawford asked him "why he did it"; he responded "because I love and care about you." A Minneapolis police officer investigating the incident was present during one call and heard Walker say "you better call out the fucking army because you're going to need it."

Walker was charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 921(a)(3), 921(a)(4)(A)(i), 922(g) and 924(e), and one count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5845(f), 5861(d) and 5871. After the jury returned guilty verdicts on both counts, the district court granted Walker's motion for judgment notwithstanding the verdict on count 1, concluding that the government had not shown that the primary ingredients in the Molotov cocktails had traveled in interstate commerce. Walker was sentenced to ten years on count 2 with three years of supervised release. He appeals, arguing that the district court committed reversible error by admitting a certified conviction of his 1994 state offense despite his offer to stipulate that he had a felony conviction. He also argues that the court abused its discretion by not giving two of his requested jury instructions.

Walker first challenges the district court's decision to admit a certified conviction of his 1994 state felony when he had offered to stipulate to the fact that he was a convicted felon, an element of count 1. He contends that his prior conviction was otherwise irrelevant, prejudicial, and not close in time to the present charges, and that use of certified convictions has a prejudicial effect. The government counters that evidence of the 1994 conviction was properly admitted because it was relevant to motive and intent, not unfairly prejudicial, and sufficiently

close in time. Moreover, certified convictions are the best form of evidence of the facts they are offered to prove, and any error was harmless.

Walker relies on Old Chief v. United States, 519 U.S. 172 (1997), to argue that his stipulation should have kept the nature of his prior felony from the jury. In Old Chief, the Supreme Court held that when a past conviction is an element of the offense for which the defendant is on trial, the defendant should be allowed to admit to the fact of the conviction rather than having the government offer additional evidence of it. Id. at 174. Nevertheless, Old Chief explicitly reaffirmed the rule that under most circumstances the prosecution is entitled to prove its case as it sees fit, and a criminal defendant may not "stipulate or admit his way out" of the full evidentiary force of the case against him. Id. at 186, 189; see also United States v. Ortiz, 125 F.3d 630, 632 (8th Cir. 1997).

We have interpreted Old Chief to bar evidence of prior convictions offered solely to prove defendant's status as a convicted criminal. United States v. Hill, 249 F.3d 707, 711-12 (8th Cir. 2001). In such circumstances the probative value of a defendant's admission to the prior conviction has equivalent value to a fuller record with less potential for prejudice, justifying a restriction on prosecutorial discretion. Id.; see also Old Chief, 519 U.S. at 190-91. In this case the charge in count 1 was the sort of status offense at issue in Old Chief so in respect to that count Walker was entitled to stipulate that he had a prior felony conviction, rather than have the prosecutor choose the method of proof for that element. The evidentiary issue was different for count 2, however, because on that charge his past conviction was offered to prove other elements of the offense and to refute his proffered defense. Such use was permissible, provided the evidence was admissible under the federal rules. See Old Chief, 519 U.S. at 189; see also United States v. Williams, 238 F.3d 871, 876 (7th Cir. 2001); United States v. Bilderbeck, 163 F.3d 971, 977-78 (6th Cir. 1999); United States v. Crowder, 141 F.3d 1202, 1203 (D.C. Cir. 1998).

Federal Rule of Evidence 404(b) bars a defendant's other crimes or bad acts from being used as character evidence, while permitting such evidence to prove other factors such as motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. Fed. R. Evid. 404(b). It is a rule of inclusion, meaning that evidence offered for permissible purposes is presumed admissible absent a contrary determination. United States v. Henson, 939 F.2d 584, 585 (8th Cir. 1991). Admissibility of 404(b) evidence is governed by four factors: the evidence must be 1) relevant to a material issue; 2) proven by a preponderance of the evidence; 3) of greater probative value than prejudicial effect; and 4) similar in kind and close in time to a charged offense. United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998). We review admission of such evidence for abuse of discretion and will reverse only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct. Id.

In arguing that his 1994 conviction was irrelevant and unduly prejudicial, Walker relies heavily on a line of cases following United States v. Jenkins, 7 F.3d 803 (8th Cir. 1994). In Jenkins we held that the government may not introduce evidence of other crimes or bad acts to contradict a defense that the defendant did not do the particular acts he was accused of in the indictment; in that situation knowledge and intent are not at issue. Id. at 806-07; United States v. Sumner, 119 F.3d 658, 660 (8th Cir. 1997). Since Walker's defense was a denial that he was present at Crawford's residence at the time of the incident, he argues that evidence of his 1994 conviction should have been excluded as irrelevant and unduly prejudicial under Jenkins.

The reach of the Jenkins line of cases has been narrowed by the Supreme Court's reaffirmation of the government's right to prove its case in the manner it chooses. Old Chief, 519 U.S. at 186-87; Hill, 249 F.3d at 711. For example in Hill, we held that the defendant could not prevent the government from introducing evidence of his prior convictions by agreeing not to make intent an issue at trial. 249

F.3d at 712. As the Court observed in Old Chief, "evidence ... has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences ... necessary to reach an honest verdict." 519 U.S. at 187. Except in very limited circumstances, a defendant may not choose the manner in which the prosecution is to present its case. The mere fact that Walker did not actively dispute motive or intent did not preclude the government from offering otherwise admissible evidence as to these factors. See Hill, 249 F.3d at 712 ("Hill's attempt to remove intent as an issue in the case did not lift the Government's burden of proving Hill's intent.").

While Walker's prior offense of making terroristic threats could have a potential prejudicial effect with respect to possessing an unregistered firearm, its relative probative value was increased by the fact that both offenses were associated with the same victim. That fact and the purpose for which the evidence was admitted here distinguish this case from United States v. Crenshaw, 359 F.3d 977, 1001-02 (8th Cir. 2004), where the probative value of the evidence was substantially outweighed by its prejudicial effect. In Crenshaw, defendant's prior convictions for reckless use of a firearm and assault could have been relevant on intent for the murder and racketeering charges, but the government relied on them primarily to impeach defendant's character which had not otherwise been put at issue. Id. In contrast, Walker's prior conviction for making terroristic threats against Crawford was part of the history of their relationship, and the trial court acted within its discretion in concluding that the conviction was relevant to his motive and intent and that its probative value outweighed its potential prejudicial effect. See United States v. Yellow, 18 F.3d 1438, 1441 (8th Cir. 1994)(prior sexual abuse of victim relevant and not unduly prejudicial in relation to rape charge); Henson, 939 F.2d at 584 (prior threats against victim relevant and not unduly prejudicial in relation to charge of maliciously damaging and destroying a building by fire). Moreover, the district court

gave a limiting instruction.  See U.S. v. Thomas, 398 F.3d 1058, 1063 (8th Cir. 2005) (limiting instructions may reduce the possibility of unfair prejudice).

Walker also complains that he was unduly prejudiced by the use of a certified conviction to prove the government's 404(b) evidence because such a document "gives a court's imprimatur upon the defendant's past criminality." A certified conviction is the best evidence of what occurred, however, and it can be less prejudicial to a defendant than other forms of proof since it recites only the "bare bones" fact of conviction rather than giving any details of the crime.  See United States v. Burk, 912 F.2d 225, 229 (8th Cir. 1990).  We conclude that Walker was not unduly prejudiced.

Walker also contends that his prior conviction was not close in time because it took place ten years before his trial.  We have noted in connection with Rule 404(b) that "there is no fixed period within which the prior acts must have occurred," United States v. Baker, 82 F.3d 273, 276 (8th Cir. 1996), and we have approved the admission of other crimes evidence for acts committed up to thirteen years before the crime charged.  United States v. Engleman, 648 F.2d 473, 479 (8th Cir. 1981); see also United States v. Molina, 172 F.3d 1048, 1054-55 (8th Cir. 1999) (upholding admission of trafficking and possession convictions from ten years prior to offense charged).  Whether or not a prior act is close in time is a question of reasonableness under all the circumstances.  United States v. Shoffner, 71 F.3d 1429, 1432-33 (8th Cir. 1995)(quoting Engleman, 648 F.2d at 479).  Since Walker's prior conviction for terroristic threats and his current offense involve the same individuals and a continuing relationship, the relative time periods are not unreasonably distant in terms of the Rule 404(b) test.

For all of these reasons, we conclude that the district court did not abuse its discretion in admitting the Rule 404(b) evidence.  Because of the strength of the government's other evidence, any error in admission of the evidence would have been

harmless in any event. The government's proof that Walker possessed Molotov cocktails included evidence of their residue at the scene, eye witness accounts, his own statements, and Crawford's testimony about the tumultuous nature of Walker's relationship with her. In these circumstances admission of the 404(b) evidence did not affect his substantial rights. See United States v. Carroll, 207 F.3d 465, 470 (8th Cir. 2000).

Walker also maintains that the district court erroneously instructed the jury as to the requisite level of intent when it told the jurors only that Walker must have knowingly possessed and failed to register a Molotov cocktail. According to him, the district court should have told the jury that in order to be convicted for possession of a Molotov cocktail he must have been aware that it was a firearm within the meaning of the National Firearms Act. The government counters that Molotov cocktails are quasi suspect in nature so that they cannot be possessed innocently, relying on Staples v. United States, 511 U.S. 600, 611-12 (1994). We review a district court's formulation of jury instructions for abuse of discretion and consider whether the instructions "correctly state the applicable law." United States v. Milk, 281 F.3d 762, 768 (8th Cir. 2002). We will reverse only where an abuse of discretion is prejudicial to one of the parties. United States v. Whitehead, 176 F.3d 1030, 1037 (8th Cir. 1999).

To support his argument Walker relies principally on Staples, 511 U.S. at 602, where the Supreme Court held that a defendant who possessed a semi automatic rifle modified into a machinegun could not be convicted without a showing that he knew the weapon fit the statutory definition of a machinegun. That decision was premised on our national tradition of lawful gun ownership, a tradition that makes the possession of many types of guns entirely innocent. Id. at 612. Other dangerous devices, such as hand grenades, are outside this tradition, however, making their ownership "quasi-suspect." Id. (distinguishing United States v. Freed, 401 U.S. 601, 609 (1971)). Quasi suspect status can justify a lower burden of proof as to intent so

that a defendant need only have knowingly possessed the item.  <u>Staples</u>, 511 U.S. at 608-09.

We have applied <u>Staples</u> in <u>United States v. Barr</u>, 32 F.3d 1320, 1322 (8th Cir. 1994), and that case is instructive here.  In <u>Barr</u>, the defendant had been convicted of possessing an unregistered sawed off shotgun in violation of the NFA and on appeal she argued similarly to Walker, that the district court had erred in not instructing the jury that she could be convicted only if she knew the weapon was a firearm under the Act.  We held that because sawed off shotguns are not traditionally lawful weapons but rather quasi suspect, Barr could have no legitimate expectation that their possession would be legal.  Once the government established quasi suspect status, it had only to show knowing possession.  <u>Id.</u> at 1324.  Walker argues that <u>Barr</u> should be distinguished because the combination of  "a bottle, a cup or two of gas" and "a blue towel" does not resemble a typical firearm and should not be found to be quasi suspect.   Quasi suspect status under <u>Staples</u> does not turn on the superficial resemblance of the object in question to a normal weapon, however, but on the likelihood that the defendant knew he was engaging in illegal activity by possessing the object.  <u>See</u> 511 U.S. at 610-11.  An assembled Molotov cocktail bears even less resemblance to a traditionally lawful item such as a rifle than does a sawed off shotgun.  We conclude that Molotov cocktails are quasi suspect in nature and that the district court did not err by instructing on knowing possession rather than specific intent.

Walker finally argues that he was entitled to have the jury instructed that he could not be convicted for failing to register a Molotov cocktail if it was impossible to register such an object.  The government counters that such an instruction was not needed because Walker could comply with the NFA by simply refraining from possession.  For support Walker looks to the Tenth Circuit's decision in <u>United States v. Dalton</u>, 960 F.2d 121, 124 (10th Cir. 1992), which overturned on impossibility grounds a conviction for failing to register a machinegun.  We have declined to

follow <u>Dalton</u>, reasoning that even if a firearm cannot be registered, an individual could still comply with the law by not taking possession of it. <u>United States v. Elliott</u>, 128 F.3d 671, 672 (8th Cir. 1998). <u>Elliot</u> is settled law in our circuit, and a panel cannot overturn it. We conclude that Walker was not entitled to a jury instruction on impossibility.

Since the district court did not abuse its discretion or commit reversible error by admitting a certified conviction of Walker's 1994 offense or by denying his requested jury instructions on intent and impossibility, we affirm the judgment of the district court.

BRIGHT, Circuit Judge, concurs in the result only.

_____