# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1224

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Diallo Davidson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 9, 2006
Filed: June 7, 2006

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

After a trial, Diallo Davidson was convicted of unlawfully possessing a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, he argues that the district court erred in admitting certain testimony and in permitting the government to exercise its peremptory challenges to exclude two African-American jurors. He also argues that his sentence was erroneously imposed under the mandatory sentencing guidelines system that prevailed prior to *United States v. Booker*, 543 U.S. 220 (2005). We affirm his conviction, but vacate his sentence and remand for resentencing.

I.

According to testimony presented at trial, on January 23, 2004, Detectives Leo Rice and Tom Sawyer from the St. Louis Metropolitan Police Violent Offender Task Force were assigned to arrest Davidson and a female companion on warrants for assault and homicide. They went to Davidson's residence and observed him getting into a vehicle, and then followed him in an unmarked vehicle onto Interstate 70. According to the detectives, when Davidson reached Interstate 70, he accelerated and began driving at a high speed and weaving in and out of traffic. Despite the officers' lights and sirens, Davidson continued to flee, exiting the interstate twice, but immediately re-entering. After several miles, Davidson's vehicle reportedly hit a cement median, toppled a freeway sign, crossed the exit ramp, and came to rest in a grassy area.

After the vehicle came to a stop, Davidson exited, and the chase continued on foot. According to Detective Rice, as Davidson ran away from the vehicle, he was holding his waistband. Rice testified that Davidson next climbed over a fence, still holding his waistband, and then stumbled and fell. Rice said that as Davidson stumbled, a "dark-colored weapon" fell from his waistband, but that Davidson quickly scooped it up and continued running. (T. Tr. at 116). Eventually, the detectives saw Davidson pass through a window of an unoccupied residence. When Davidson exited the residence four seconds later, he was placed under arrest. After Davidson's arrest, the residence was searched, and a firearm was discovered in the window.

A grand jury returned a one-count indictment against Davidson, and he entered a plea of not guilty. During voir dire at the ensuing jury trial, five jurors were stricken for cause, and there were then twenty-eight members of the panel available for the jury, six of whom were African-American. The defense struck ten potential jurors, including one African-American female juror, and the government struck six, including two African-American female jurors. The defendant challenged the

government's exercise of its peremptory strikes with respect to the two African-American jurors, Jurors 5 and 25, as an alleged violation of the equal-protection component of the Fifth Amendment. *See Batson v. Kentucky*, 476 U.S. 79 (1986); *United States v. Elliott*, 89 F.3d 1360, 1364 & n.3 (8th Cir. 1996).

Without ruling on whether the defense had established a prima facie case of an equal protection violation, the district court permitted the government to explain its reasons for choosing to strike those jurors. The government stated that it struck Juror 5 because she seemed nervous and "off" and because she was a renter, and that it struck Juror 25 because she was single, a renter, and employed by a counseling center, which the government perceived as increasing the likelihood that she would be sympathetic toward criminal defendants. The court accepted these reasons as legitimate race-neutral reasons that were not pretextual, and denied the defendant's *Batson* challenges.

Prior to trial, the court also considered Davidson's motion in limine requesting that the government be prevented from introducing certain evidence at trial, including evidence that Davidson was wanted for homicide and assault when he was pursued by the police on January 23. The district court denied the motion, and at trial, Detective Rice testified that he and Detective Sawyer were looking for Davidson, a female, and a vehicle "pursuant to a 'wanted' for homicide and an unrelated assault." (T. Tr. at 101). The jury was given a cautionary instruction that this evidence was not to be considered in determining whether Davidson carried out the acts involved in the crime charged in the indictment. (Jury Instruction No. 8).

During its deliberations, the jury twice indicated that it was unable to reach a verdict, but after the court instructed the jury to continue deliberating, the jury eventually returned a verdict, and found Davidson guilty. At sentencing, the district court arrived at a United States Sentencing Guidelines range of 77-96 months'

imprisonment. The court, believing itself bound by the mandatory guidelines prior to *Booker*, imposed a sentence of 96 months' imprisonment.

II.

Davidson argues that the district court erred in denying his challenge, based on *Batson*, to the government's two peremptory strikes of African-American venirepersons. Once the government responds to a *Batson* challenge with a race-neutral explanation for its strike, the objecting party must prove that the explanation is a pretext for discrimination, and it may support its claim by showing that the characteristics of the stricken venireperson are shared by a non-minority venireperson who is not stricken. *Miller-El v. Dretke*, 125 S. Ct. 2317, 2325 (2005). Ultimately, the district court must determine whether the objecting party has proved that the strikes were motivated by purposeful discrimination, and we review that determination for clear error. *See United States v. Blaylock*, 421 F.3d 758, 769 (8th Cir. 2005).

In this case, Davidson argues that two of the jurors stricken by the government were eliminated for racially discriminatory reasons. As to the first, Juror 5, the government explained that it was concerned about her demeanor – it believed that she "seemed very, very uncomfortable and physically not attentive and somewhat 'off'" (T. Tr. at 74) – and about the fact that she was a renter. The government similarly explained its strike of Juror 25 as motivated in part by the fact that she was single and not a homeowner, and in part by the fact that she worked at a counseling service center, which the government believed suggested that she was potentially "more likely to look to the root causes and to empathize with people who are accused of crime than the population at large." (T. Tr. at 78). In support of this claim that these reasons are pretextual, Davidson points to two non-minority jurors whom he believes were similarly situated but were not stricken. One, Juror 12, was a renter with a high school education and a shorter employment history than Juror 5. The second, Juror 1, was another person who lived with a homeowner, like Juror 25, but was not stricken.

-4-

The district court did not clearly err in determining that the government's use of its peremptory strikes was not racially motivated. The venirepersons that Davidson offered as "similarly situated" were in fact similarly situated in only one respect: home ownership. They did not share the other qualities identified by the government as motivating the strike, and the reasons the government identified were race-neutral and appropriate. Body language and demeanor can be appropriate reasons to strike jurors, *e.g.*, *Reynolds v. Benefield*, 931 F.2d 506, 512-13 (8th Cir. 1991), and the inference that Juror 25's employment might make her more sympathetic to criminal defendants is similarly valid. *United States v. Pherigo*, 327 F.3d 690, 695-96 (8th Cir. 2003). The district court is afforded deference in its determinations of the credibility of the prosecutor and the race-neutral explanations offered. *Id.* at 696. We note, moreover, that the government did not exercise its strikes to eliminate the greatest possible number of minority jurors, a factor which we have said "negates an allegation of purposeful discrimination." *Miller v. United States*, 135 F.3d 1254, 1257 (8th Cir. 1998).

Davidson also argues that the district court abused its discretion in admitting evidence that officers were pursuing him on a warrant for murder and assault. During Detective Rice's testimony, after the detective indicated he was looking for Davidson, a female, and a vehicle, the government asked: "Now was that pursuant to a 'wanted' for homicide and an unrelated assault? . . . As a separate investigation from what you're going to testify to here, correct?" (T. Tr. at 101). Detective Rice answered this query in the affirmative. The information was not mentioned again, and the jury was given an instruction cautioning it not to consider the testimony as evidence that Davidson had committed the crime of unlawful possession of a firearm.

The government argues that the "background" information helped explain to the jury why Davidson was pursued, but Davidson counters that the information had little to no probative value, and that the specific details were unfairly prejudicial and improperly suggested to the jury that he had a criminal propensity. *See* Fed. R. Evid.

403, 404(b). There is merit to Davidson's point that the detail about charges for which he was wanted had limited probative value, as any legitimate curiosity that arose in the jury regarding why the detectives were pursuing Davidson probably could have been satisfied with a less specific explanation that he was wanted on unrelated charges, without specifying homicide and assault.

We cannot say, however, that evidence was wholly irrelevant. Davidson's defense that he was not carrying a firearm during the chase placed in question the credibility of Detective Rice, who claimed to see Davidson dropping a weapon, and the full description of why the detectives were there "was relevant . . . to explain the police conduct and to bolster the officers' credibility." *United States v. Malik*, 345 F.3d 999, 1002 (8th Cir. 2003).

The question of admissibility thus turns on the balancing of probative value and the danger of unfair prejudice under Rule 403. Davidson concedes that it was permissible for the court to permit evidence that he was subject to an active arrest warrant, and we are concerned only with the incremental danger of unfair prejudice arising from the identification of the specific crimes for which Davidson was wanted. The risk of unfair prejudice from this additional detail seems relatively modest, for the jury already knew that Davidson was wanted for *some* crime serious enough to trigger a lengthy high-speed chase. The district court issued a cautionary instruction to the jury, thus diminishing the risk that the evidence unfairly prejudiced Davidson. *See United States v. Franklin*, 250 F.3d 653, 659 (8th Cir. 2001). Evidentiary rulings are reviewed for abuse of discretion, and we afford deference to the district judge "who saw and heard the evidence." *United States v. Ziesman*, 409 F.3d 941, 951 (8th Cir. 2005) (internal quotations omitted), *cert. denied*, 126 S. Ct. 579 (2005). While it certainly would have been reasonable for the district court to limit further the scope of the "background" testimony based on the balancing test of Rule 403, *cf. Malik*, 345 F.3d at 1003 (Melloy, J., concurring), we conclude that the danger of unfair prejudice did not so substantially outweigh the probative value as to dictate the conclusion that

the district court abused its discretion in permitting the testimony. *See United States v. Rios*, 856 F.2d 493, 497 (2d Cir. 1988).

Finally, Davidson contends that he is entitled to resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), which declared the sentencing guidelines "effectively advisory," because the district court in this case applied the guidelines in a mandatory fashion. The government concedes there was error and that the case should be remanded for resentencing based on the advisory guidelines and 18 U.S.C. § 3553(a).

For the foregoing reasons, we affirm Davidson's conviction, but vacate his sentence and remand for resentencing in light of *Booker*.

_____