# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2045

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Richard William Gettel, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 17, 2006
Filed: January 24, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

A jury found Richard William Gettel guilty of possessing a stolen firearm, see 18 U.S.C. § 922(j) (2000), and aiding and abetting a felon in possession of a firearm, see id. §§ 2 and 922(g)(1). Gettel appeals, arguing that the District Court[1] erred by (1) failing to suppress evidence seized pursuant to a stale search warrant, (2) admitting character evidence to show criminal propensity, and (3) admitting hearsay testimony. We affirm the judgment of the District Court.

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

I.

On October 9, 2002, several guns, including a nine-millimeter handgun, were stolen from Joseph Reineke's house. Reineke had shown the guns to Seth Greiner the weekend prior to the burglary. Sometime in October 2002, Richard Gettel and Troy Foote met Greiner in another individual's driveway. Greiner opened his car's trunk, removed the handgun, and handed it to Gettel, stating, "[W]e're even now," to which Gettel responded, "[Y]eah, we're even." Trial Tr. at 45. Greiner also stated that the gun was "hot." Id. That same day, after purchasing ammunition and taking turns firing the handgun, Gettel and Foote drove to Woody Saltzman's home. Gettel gave the handgun to Saltzman in exchange for eighty dollars. In March 2003, police recovered the handgun from Saltzman. On July 19, 2005, Gettel was indicted for possessing a stolen firearm and aiding and abetting a felon (Foote) in possession of a firearm.

During pretrial proceedings, Gettel challenged the admissibility of evidence seized during the execution of a search warrant unrelated to this case. On March 20, 2003, police obtained a warrant to search Gettel's residence for a Nintendo 64 game system, video games, and a car stereo that had been reported stolen on January 25, 2003. The affidavit in support of the warrant contained the following statements. The owner, Peter Graphenteen, had first noticed that the Nintendo and games were missing during the first ten days of January but did not initially report them stolen because he believed that his brother had borrowed them. Graphenteen noticed that the stereo had been stolen on January 25 and made the report to police. Graphenteen was an acquaintance of Gettel's and suspected that Gettel had committed the burglary. Previously, on January 17, 2003, Foote's girlfriend, Sandra Kasper, had told police that Gettel had given her a game that matched one reported stolen. This game was turned over to police on February 26, 2003. On March 20, 2003, Kasper's daughter stated that she believed Gettel had given her mother the game in January. On February 25, 2003, Foote had told police that Gettel stated that Gettel had taken a

Nintendo 64, video games, and a car stereo from a house and car matching the description of Graphenteen's residence and vehicle. Foote also stated that he had played a Nintendo 64 while at Gettel's house. Foote also had observed video games at Gettel's house matching the description of those reported stolen. Gettel had been incarcerated from January 9 to January 11; January 27 to January 28; and February 8 through the date that the warrant was issued. As a result, Gettel would have not have been incarcerated when the burglary allegedly occurred but would have been incarcerated during a substantial amount of time after that and before the warrant was issued. Finally, Gettel and Foote had been involved in several burglaries in the same area during 2002 and 2003.

Police executed the warrant on March 21, 2003, the day after it was issued. The search yielded a .22-caliber rifle found in plain view, which was later introduced at the trial of the present case as other-acts evidence. Gettel moved to suppress the rifle as the fruit of an unlawful search, alleging that the information in the affidavit was stale because nearly two months had passed between the burglary and the issuance of the warrant. The District Court denied the motion, adopting the Report and Recommendation of the Magistrate Judge.[2]

Gettel also challenged the introduction of the rifle as impermissible evidence of a bad act offered to show propensity to commit a criminal act. The District Court initially allowed the government to introduce the rifle on the basis that it was offered to prove (1) Gettel knowingly possessed the handgun and knew that it was stolen, (2) Gettel intended to possess the handgun, and (3) Gettel and Foote had a common scheme or plan to steal guns.

---

[2]The Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota.

At trial, the government also offered Foote's testimony that he and Gettel had stolen the rifle weeks after obtaining the stolen handgun. Gettel renewed his objection to introduction of evidence concerning the rifle, adding that the prejudicial nature of Foote's testimony merited exclusion of the testimony and of the rifle itself. The government responded that the evidence was being offered to prove (1) that Gettel knowingly possessed the handgun and (2) that he knew it was stolen. The District Court overruled Gettel's objection. The District Court instructed the jury that it could only consider this evidence for non-propensity purposes.

A significant portion of Gettel's defense focused on Foote's alleged incentive to implicate Gettel. Gettel's defense theory was that Foote acquired the handgun from Greiner and sold it to Saltzman and that Foote was now lying and implicating Gettel in order to protect himself. Gettel cross-examined Foote regarding a statement Foote made to state police on January 22, 2003, while incarcerated for suspicion of burglary. The cross-examination showed that Foote initiated the conversation with police and offered incriminating information about Gettel with the hope of avoiding imprisonment on state charges. Gettel also disputed the evolution of Foote's story since 2003, as Foote had originally told police that he did not know where Gettel obtained the handgun but then testified at trial that Gettel had obtained it from Greiner. Foote also had originally denied knowing the origin of the rifle but testified regarding its theft at trial. Gettel also highlighted Foote's federal plea agreement as evidence that he had a motive to testify favorably for the government.

In response to the attack on Foote's credibility, the government offered the testimony of federal ATF Agent Burton Rutter, who testified about Foote's statement to him, which Foote made on July 15, 2003. Rutter's testimony regarding Foote's statement essentially matched Foote's trial testimony, including that Gettel had acquired the handgun from Greiner and transferred it to Saltzman. Gettel objected on hearsay grounds, and the government responded that the statement was offered to

rebut Gettel's charge of fabrication against Foote. The District Court overruled the objection.

Gettel was found guilty on both counts and was sentenced to 235 months of imprisonment. Gettel appeals, challenging the District Court's rulings on the search warrant, other-acts evidence, and hearsay testimony.

II.

Gettel first contends that the search warrant was not supported by probable cause and therefore, the rifle should have been suppressed. Gettel specifically asserts that the information in the search warrant affidavit was stale because the warrant was issued two months after the burglary allegedly occurred. When reviewing the denial of a motion to suppress, we review a district court's conclusions of law de novo and its findings of fact for clear error. United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000).

A search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched. Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998). A probable cause determination is made after considering the totality of the circumstances. United States v. Hernandez Leon, 379 F.3d 1024, 1027 (8th Cir. 2004) (citing Illinois v. Gates, 462 U.S. 213, 230 (1983)). Probable cause must exist *at the time the search warrant is issued*. United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir.), cert. denied, 516 U.S. 871 (1995). While a lapse of time between the observations of a witness and the issuance of a search warrant may render probable cause fatally stale, "[t]here is no bright-line test for determining when information is stale." United States v. Maxim, 55 F.3d 394, 397 (8th Cir.), cert. denied, 516 U.S. 903 (1995). The passage of time is not necessarily the controlling factor in determining staleness, as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the

search," must be considered. Id. (quoting United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992)).

The District Court correctly held that probable cause existed on the date the search warrant was issued. Although approximately two months had lapsed between the burglary and the issuance of the warrant, several facts supported a finding that the information in the affidavit was not fatally stale. Most notably, the fact that Gettel was incarcerated for a substantial portion of the time between the burglary and the issuance of the warrant showed that Gettel had little time to dispose of the stolen property. When there is little opportunity to dispose of evidence, it is more likely that the information contained in a search warrant affidavit is not stale. See, e.g., United States v. Chapman, 954 F.2d 1352, 1373 (7th Cir. 1992) (holding affidavit with thirty-seven-day-old information was not stale where defendant had few "inconspicuous opportunities" to consume large amounts of stolen cash); cf. United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993) (holding affidavit was not stale in child pornography case because, inter alia, evidence was not likely discarded over a nine-day period). Also, the reported use of the property indicated that Gettel had not moved the items. Although he had given one game to Kasper, Gettel had the Nintendo at his house when Foote played it. The police could have reasonably suspected that Gettel was keeping the stolen property for his personal entertainment rather than seeking to immediately resell the goods. Cf. United States v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996) (holding affidavit was not stale where it was "equally possible" that stolen property was still in residence as that it had been removed during interim two weeks). Considering the totality of the circumstances, the likelihood that the stolen property was at Gettel's residence at the time the warrant was issued provided probable cause to support the warrant.

Moreover, even assuming that the information in the affidavit was stale, the "good faith" exception of United States v. Leon, 468 U.S. 897 (1984), would apply. Considering the aggregate information implicating Gettel in the burglary, it was

reasonable for the police to believe that probable cause existed to conduct the search based on the warrant. See Rugh, 968 F.2d at 753. Therefore, Gettel's challenge to the search warrant fails.

III.

Gettel next challenges the admission of evidence that he and Foote jointly possessed the stolen rifle weeks after possessing the stolen handgun, arguing that it was inadmissible propensity evidence. We review the District Court's admission of evidence under Federal Rule of Evidence 404(b) for abuse of discretion. United States v. Almendares, 397 F.3d 653, 661 (8th Cir. 2005). The District Court may be affirmed on any basis for admission, even if not considered at trial. United States v. Crenshaw, 359 F.3d 977, 1000 (8th Cir. 2004).

Rule 404(b) prohibits a defendant's other crimes or bad acts from being used as character evidence but allows this evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident." Fed. R. Evid. 404(b). This is a "rule of inclusion." United States v. Walker, 428 F.3d 1165, 1169 (8th Cir. 2005), cert. denied, 126 S. Ct. 1385 (2006). Evidence of a prior bad act is admissible if it is: "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." United States v. Loveless, 139 F.3d 587, 592 (8th Cir. 1998).

Gettel argues that: (1) the evidence was offered to show propensity rather than for a permissible purpose; (2) his knowledge of the handgun's stolen status was not a material issue because he did not dispute that knowledge at trial; (3) the act was not proven by a preponderance of the evidence; (4) the act had little probative value, and any value it did have was outweighed by its prejudicial effect; and (5) the District Court did not make a required finding regarding the prejudicial impact of the

testimony. We reject Gettel's arguments and hold that the District Court did not abuse its discretion in admitting both the stolen rifle and Foote's testimony concerning its origin.

First, the rifle evidence was relevant to several material issues at trial. The evidence was offered to show the connection between Gettel and Foote near the time of the charged crime—possession of the handgun. Because the focus of Gettel's defense was that Foote was not credible, the relationship of Foote and Gettel was a material issue. The government may refute a proffered defense with Rule 404(b) evidence. See United States v. Davis, 457 F.3d 817, 823–24 (8th Cir. 2006) (holding that an officer's other-acts testimony regarding seized drugs was admissible, inter alia, to rebut the defendant's contention that the officer had a vendetta against the defendant); see also United States v. Davidson, 449 F.3d 849, 853 (8th Cir.) (noting that officer was pursuing defendant on murder and assault charges when defendant was found illegally in possession of a weapon and holding that this evidence was properly admitted to bolster the officer's credibility where his credibility had been placed in question by defense), cert. denied, 127 S. Ct. 609 (2006); Walker, 428 F.3d at 1169. Here, Gettel and Foote's joint possession of the rifle confirmed the connection between the two, and therefore, the evidence was properly admitted to rebut Gettel's attacks on Foote's testimony.

Additionally, the evidence was relevant to prove Gettel's knowledge that the handgun was stolen. Although Gettel contends that he did not dispute that he knew the handgun was stolen or that he and Foote were not allowed to possess a firearm, the government was still entitled to prove its case. A defendant may not "'stipulate or admit his way out' of the full evidentiary case against him." Walker, 428 F.3d at 1168 (quoting Old Chief v. United States, 519 U.S. 172, 186 (1997)). Here, Gettel's knowledge of the nature of the handgun was a material issue at trial; therefore, evidence of the rifle was admissible to prove knowledge. See, e.g., United States v. Hill, 249 F.3d 707, 712–13 (8th Cir. 2001) (holding that the defendant could not

prevent introduction of prior convictions by agreeing not to make intent an issue at trial).

Second, the fact that Gettel stole the rifle was shown by a preponderance of the evidence at trial. Foote testified that he and Gettel stole the rifle weeks after obtaining the stolen handgun. Kasper's daughter testified that Gettel took the rifle out of Kasper's home. An officer testified that he recovered the rifle during the search of Gettel's residence, which was consistent with the search inventory introduced at trial. This evidence permitted the jury to find by a preponderance of the evidence that Gettel stole the rifle.

Third, the question whether the probative value of the evidence outweighed any prejudicial effect is left to the trial court's discretion, and we will normally defer to its judgment. United States v. Franklin, 250 F.3d 653, 659 (8th Cir.), cert. denied, 534 U.S. 1009 (2001). Here, the probative value of the rifle evidence was increased by the fact that it involved the same people—Gettel and Foote—whose relationship was brought into question by Gettel's attacks on Foote's credibility. See Walker, 428 F.3d at 1170 (noting that probative value was increased where prior bad acts involved same victims as current charge). While the risk of prejudice was not insignificant, it was adequately diminished by the District Court's cautionary instruction. See Davidson, 449 F.3d at 853; Franklin, 250 F.3d at 659. This instruction also was sufficient to allow for admission of the evidence under the Rule 403 relevance-prejudice balancing test. Franklin, 250 F.3d at 659.

Fourth, the rifle evidence was of a crime sufficiently similar in kind and close in time to the stolen handgun charge. The rifle theft occurred just weeks after the handgun was obtained, and both acts involved the possession of stolen firearms by the same two felons in the same area.

Fifth, Gettel's contention that the District Court did not make a sufficient finding regarding the prejudicial effect of the rifle evidence is without merit. The District Court on two occasions conducted colloquies with government and defense counsel specifically weighing the impact of the proposed rifle evidence. During pretrial motions, Gettel objected to the rifle evidence and argued that this evidence would simply show a propensity to steal firearms. The government responded that because the rifle theft occurred within weeks of Gettel's alleged possession of the handgun, the rifle evidence would show Gettel's knowledge that the handgun was stolen. The District Court determined that the rifle evidence was admissible for a non-propensity purpose and initially permitted the government to introduce the evidence. Later, Gettel renewed his objection after he discovered that the government would offer Foote's testimony concerning the rifle theft. Gettel specifically asked the court to "revisit [the ruling] given the prejudicial nature of this testimony." Trial Tr. at 22. The District Court again required the government to articulate a sufficient basis for admission, and the government duly responded that the circumstances surrounding the rifle theft would show that Gettel knowingly possessed another stolen weapon. After considering these competing arguments concerning the effect of the rifle evidence, the District Court overruled Gettel's objection. We are satisfied that the District Court properly examined the prejudicial effect of the evidence based on its two rulings that considered both Gettel's and the government's arguments regarding the impact of the rifle evidence.

Accordingly, we reject Gettel's arguments concerning the admission of the rifle evidence and hold that the District Court did not abuse its discretion in admitting this evidence.

IV.

Finally, Gettel argues that the admission of Rutter's testimony regarding Foote's statement requires reversal. We review the District Court's admission of a statement

under Federal Rule of Evidence 801(d)(1)(B) for abuse of discretion. United States v. Conroy, 424 F.3d 833, 839 (8th Cir. 2005).

"A statement is not hearsay if . . . [t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, . . . the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . ." Fed. R. Evid. 801(d)(1)(B). But the statement is admissible under Rule 801(d)(1)(B) only if it was made *before* the alleged fabrication or improper influence or motive. Tome v. United States, 513 U.S. 150, 167 (1995).

The threshold issue is whether Foote's alleged motive or fabrication arose in January 2003 because of his pending state burglary charges or in February 2005 after he was arrested on a federal charge. We conclude that Foote's alleged motive to implicate Gettel arose in January 2003 while Foote was incarcerated anticipating state burglary charges—before Foote made the statement to Rutter in July 2003. A significant portion of Gettel's cross-examination of Foote focused on Foote's motivation to speak with state police on January 22, 2003:

Q.    You're scared, you don't want to go to prison, and so you're finding any way you can to get out of going to prison.

A.    Yes.

Q.    With one of those ways is to dump on [Gettel]?

A.    Yeah.

Trial Tr. at 55.

-11-

Q.     Now, when you were doing anything you could to get [these charges] off of you, you were facing burglary charges at that time?

A.     Yes.

Id. at 58.

Q.     And so at that point when you're willing to dump on [Gettel], it was all about state charges?

A.     Yeah.

Id.

Additionally, during redirect examination Foote confirmed that he spoke to state police in January 2003 hoping to avoid the state charges:

Q.     Why did you tell the officers . . . that I don't care about [Gettel], and that you were going to talk about what had happened?

A.     At the time I was, . . . in [prison] on a burglary charge.

Id. at 74-75.

Foote's testimony confirmed that he had a motive when he provided the January 2003 statement implicating Gettel—to avoid pending state criminal charges. Gettel's cross-examination of Foote implicitly, if not explicitly, alleged that Foote's statements were fabricated beginning in January 2003. We conclude that the alleged fabrication indeed began in January 2003.

Because Foote's alleged motive arose in January 2003, the District Court abused its discretion in admitting Rutter's hearsay testimony concerning the July 2003 statement under Rule 801(d)(1)(B) and Tome. See, e.g., United States v. Beaulieu, 194 F.3d 918, 920 (8th Cir. 1999) (holding that the district court erred in admitting hearsay statement under Rule 801(d)(1)(B) that was made after alleged fabrication arose). Reversal is not required, however, because the error was harmless.

A trial error is harmless "if '[o]ther evidence to the same effect was properly before the jury.'" United States v. White, 11 F.3d 1446, 1451 (8th Cir. 1993) (alteration in original) (quoting United States v. Austin, 823 F.2d 257, 260 (8th Cir. 1987), cert. denied, 484 U.S. 1044 (1988)). Where the erroneously admitted evidence is "at most 'an extra helping of what the jury had heard before,' the evidence is merely cumulative," and reversal is not required. United States v. Ramos-Caraballo, 375 F.3d 797, 803 (8th Cir. 2004) (quoting United States v. Simonelli, 237 F.3d 19, 29 (1st Cir.), cert. denied, 534 U.S. 821 (2001)).

Rutter's testimony essentially matched Foote's trial testimony that recounted the acquisition and transfer of the handgun by Gettel and Foote. Additionally, both Saltzman and his wife testified that Gettel had given Saltzman a nine-millimeter handgun in exchange for eighty dollars in October or November 2003 and that Foote was with Gettel at the time. Saltzman also identified the gun presented at trial as the one that Gettel had given to Saltzman. Moreover, Kasper testified that she saw Gettel and Foote in possession of a black handgun in 2003. Because the hearsay testimony was merely cumulative of Foote's trial testimony, see White, 11 F.3d at 1451, and the government's other admissible evidence amply demonstrated Gettel's guilt, see United States v. Beasley, 102 F.3d 1440, 1450 (8th Cir. 1996), cert. denied, 520 U.S. 1246 (1997), the error was harmless and reversal is not required.

V.

The affidavit in support of the search warrant established probable cause to issue the warrant. The evidence concerning the rifle found in Gettel's residence was admissible to explain Gettel's relationship with Foote and to prove that Gettel knew that he possessed a stolen firearm. Although the District Court erred in admitting the hearsay statement made after Foote's alleged motive and fabrication arose, the cumulative effect of the testimony rendered the error harmless. Therefore, the judgment of the District Court is affirmed.

_____