31 So.3d 728 (2009)
C.R.F., Jr.
v.
STATE of Alabama.
CR-07-1135.
Court of Criminal Appeals of Alabama.
March 20, 2009.
Rehearing Denied April 24, 2009.
Certiorari Denied September 11, 2009 Alabama Supreme Court 1080980.
*729 James Robert Engelthaler, Florence, for appellant.
Troy King, atty. gen., and Jean A. Therkelsen, asst. atty. gen., for appellee.
WISE, Presiding Judge.
AFFIRMED BY UNPUBLISHED MEMORANDUM.
WINDOM and KELLUM, JJ., concur.
WELCH, J., concurs in part and dissents in part, with opinion.
WELCH, Judge, concurring in part and dissenting in part.
After being found in possession of two pornographic videotapes that depicted his then teenaged daughter, L.A.F.J., the appellant, C.R.F., was convicted of two counts of production of obscene matter, a violation of § 13A-12-197(a), Ala.Code 1975, and one count of allowing a child to engage in the production of obscene matter, a violation of § 13A-12-196, Ala.Code 1975. On appeal, C.R.F. argued that the trial judge erred when he denied C.R.F.'s motion to recuse himself; that the trial judge erred when it denied his motion to suppress the evidence seized from his residence; and that the two convictions for producing obscene matter and allowing a child to engage in the production of obscene matter violate double-jeopardy principles. I agree with the majority's resolution of the recusal and double-jeopardy issues, and I concur with those portions of its unpublished memorandum. I disagree with the majority's analysis and the result it reached as to the suppression issue. As to that portion of the memorandum, I dissent.
C.R.F. argues that search warrant that resulted in the evidence he sought to suppress was based on hearsay allegations made 19 years earlier by his ex-wife, some of which were made while the ex-wife was under hypnosis and some of which were made to a psychologist. C.R.F. also argues that nothing on the face of the affidavit submitted in support of the search warrant indicated that anyone had seen anything illegal in C.R.F.'s house for over 19 years, and that the trial court erred when it denied C.R.F.'s motion to suppress. I agree.
"The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the Fourth Amendment, and this, together with legislation regulating the process, should be liberally construed in favor of the individual." Sgro v. United States, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932).
"The Fourth Amendment to the United States Constitution provides, in pertinent part, that `[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.' Thus, `[a] search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched.' United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir.2007). Moreover, `"[s]ufficient evidence must be stated in the affidavit to support a finding of probable cause for issuing the search warrant," and "[t]he affidavit must state specific facts or circumstances which support a finding of probable cause[;] otherwise the affidavit is faulty and the warrant may not issue."' Ex parte Parker, 858 So.2d 941, 945 (Ala.2003) (quoting Alford v. State, 381 So.2d 203, 205 (Ala.Crim.App.1979)).
"`A probable cause determination is made after considering the totality of the circumstances.' Gettel, 474 F.3d at *730 1086. To pass constitutional muster, `the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued.' United States v. Greany, 929 F.2d 523, 524-25 (9th Cir. 1991) (emphasis added). Thus, `[t]he police will . . . encounter problems of "staleness" of their information if they delay too long in seeking a search warrant.' United States v. Watson, 423 U.S. 411, 450 n. 14 (1976)."
Ex parte Green, 15 So.3d 489, 492 (Ala. 2008).
"Whether the circumstances recited in an affidavit offered in support of an application for a search warrant are such that the probable cause that might once have been demonstrated by them has grown `stale' is a matter that `must be determined by the circumstances of each case.' Sgro v. United States, 287 U.S. 206 (1932)."
Vinson v. State, 843 So.2d 229, 233 (Ala. 2001).
The June 7, 2007, affidavit prepared by district attorney's investigator Ron Lansdell and offered in support of the search warrant alleged that C.R.F.'s ex-wife had made statements  in 1988  indicating that in 1986 a man who was subsequently murdered had "a box" in his apartment; the ex-wife believed that the box contained pornographic films, some of which involved her daughter, L.A.F.J. (C. 49.)[1] The affidavit also alleged that in 1988 the ex-wife stated that C.R.F. always kept a box by the bed; she thought that the box might have had items that belonged to the murder victim, and she said that C.R.F. told her that the box contained movies of the murder victim.[2] The affidavit alleged that ex-wife had made a statement in March 2005 that, after the murder victim was killed, C.R.F. had gone to the victim's apartment to retrieve the box. (C. 50.) The ex-wife also stated in 2005 that C.R.F. was living with his mother during the week, and that the ex-wife "believed at that time that [C.R.F.] had the `box' at his mother's house." (C. 50.)
Lansdell further alleged in the affidavit that on June 6, 2007, he had spoken to C.R.F.'s daughter, L.A.F.J. L.A.F.J. was born in 1976. The affidavit alleged that L.A.F.J. remembered her father watching "`homemade' and store bought pornographic films," and that she remembered seeing a film labeled "Raiders of the Lost Arc" that contained a pornographic film of her parents. The affidavit alleged that *731 L.A.F.J. said that her father had molested her when she was between the ages of 14 and 16 years old. The affidavit also alleged that L.A.F.J. stated that her parents had divorced in 1988 and that her father had moved in with his mother and that he continued to reside there. The affidavit alleged that, three weeks before she gave the statement to Lansdell, L.A.F.J. had been in her grandmother's residence, had seen "the `box' beside his bed," along with what she believed to have been shelves of pornographic movies "because they were labeled the same as they were when she was a child." (C. 51.)
Defense counsel argued at the hearing on the motion to suppress:
"[T]here is just no evidence that anybody saw anything at the house that was illegal between the times that [L.A.F.J.] was fourteen  since she was fourteen to sixteen years old and I think the evidence is that she would be thirty-one years old now. Born in 1976. Six twenty of 1976 so that would have been fifteen, sixteen years ago if not longer and there's no evidence that anybody had seen anything illegal in that house in fourteen to sixteen years. There's just no  no evidence to support probable cause to believe there was anything there now and particularly at the time that the judge issued the search warrant."
(R. 37-38.)
Defense counsel further argued:
"You know, Lansdell never testified he had any personal knowledge of any of the things that are in this affidavit but in the affidavit it references a box. Not even a particular box that could even be described. It's just a box that she may have seen sixteen years earlier or seventeen years earlier and it never says that she saw anything illegal in the box. He keeps saying porn but porn is just not necessarily illegal. She said  and there's nothing in the affidavit that she ever saw any child pornography in the affidavit and there's no evidence that there was ever any pornography, any child pornography or anything illegal since even the time that would have been sixteen or seventeen years ago."
(R. 39.)
Defense counsel accurately summarized the evidence  or rather the lack of any credible evidence  supporting probable cause for the search warrant.
Certainly the trial court's decision as to probable cause is entitled to great deference. However, I cannot agree that there is any credible testimony supporting a finding of probable cause or for the issuance of the search warrant in this case. First, the allegations of the ex-wife on which the State primarily relied were, beyond question, stale. More than a decade had passed since the ex-wife had provided information about what she said was C.R.F.'s possible possession of child pornography. Moreover, some of the ex-wife's allegations were from a 1988 statement that the trial judge acknowledged contained "wild and fantastic stories about a lot of things," none of which the judge  then the chief prosecutor for the county  could verify in any way at the time they were made. Second, the State's attempt to "freshen" those stale allegations with additional allegations from L.A.F.J. failed utterly, because L.A.F.J. provided information only that C.R.F. had "a box" and some videotapes in his possession. Nothing identified that particular box as the same box in which C.R.F. might have kept pornographic materials years earlier when L.A.F.J. was a child. The majority overstates the evidence when it concludes otherwise. L.A.F.J. had told investigators that C.R.F. had taken Polaroid photographs of her while she was naked. She *732 never mentioned that there were any videotapes containing child pornography and never stated that she knew that the photographs still existed, or where they might have been kept. The fact that L.A.F.J. saw labels on videotapes that looked similar to labels she remembered seeing on pornographic movies many years earlier, without stating to the investigators that hand-written labels were used on videotapes of child pornography, or that there were any videotapes containing child pornography was also insufficient indicate that C.R.F. was in possession of child pornography in 2007, and it was insufficient to establish probable cause.
The trial court should have granted C.R.F.'s motion to suppress. Therefore, I respectfully dissent.
NOTES
[1] C.R.F. filed a motion asking the trial judge to recuse himself on the ground that the judge had been employed as the chief assistant district attorney for Lauderdale County and had participated in taking one of the 1988 statements from the ex-wife. The State acknowledged that "[p]ortions of [that] statement are one bit of information the State is relying on that was used to get a search warrant on [C.R.F.'s] home[. She] makes statements in that statement about pornography and about a box." (R. 10.) Yet, when the trial judge denied the motion to recuse, the judge stated:

"My memory of the statement is that she told wild and fantastic stories about a lot of things and I kept probing and probing trying to find anything that she could say that I could verify in any way. She never said anything that I could independently verify to be the truth. So my memory is that I had no reason to believe anything this lady said and this was as far as I was concerned just delusional rantings of somebody trying to get a good deal in Sumter County by telling stories she knew nothing about, so I filed it away and didn't think anymore about it for nineteen years. . . ."
(R. 9.)
[2] The affidavit further alleges that the ex-wife was considered a suspect in the victim's murder; that she had implicated C.R.F. in the murder; and that at one point she claimed that she had shot the victim because she wanted the box.